UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

_____
                                        )
In re FEDEX GROUND PACKAGE              )    CAUSE NO. 3:05-MD-527 RM
SYSTEM, INC., EMPLOYMENT                )           (MDL-1700)
PRACTICES LITIGATION                    )
----------------------------------------------  )
THIS DOCUMENT RELATES TO:               )
                                        )
3:05-CV-596 (*Slayman* - Oregon)        )
3:07cv120 (Nevada)                      )
3:07cv272 (Arizona)                     )
3:07cv322 (Connecticut)                 )
3:07cv324 (*Givens* - FLSA)             )
3:07cv325 (*Vagas* - MCSA)              )
3:07cv326 (North Carolina)              )
3:07cv328 (*Leightner* - Oregon)        )
3:08cv336 (Ohio)                        )
3:07cv411 (Georgia)                     )
3:07cv412 (Vermont)                     )
3:07cv478 (Colorado)                    )
3:08cv193 (*Boudreaux* - Louisiana)     )
3:08cv53 (Utah)                         )
_____  )


OPINION AND ORDER

In orders dated October 15, 2007 (Doc. # 906) and March 25, 2008 (Doc. #

1119), the court resolved motions for class certification for the following states:

Alabama, Arkansas, Florida, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland,

Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, New

Jersey, New York, New Hampshire, Oregon, Pennsylvania, Rhode Island, South

Carolina, South Dakota, Tennessee, Texas, Virginia, West Virginia, and Wisconsin.

These were the motions in the first three waves of such motions. The reader's

familiarity with the earlier orders is assumed.

The parties made similar arguments in most of those first three waves of class certification motions. Most of the rulings turned on whether, under the law governing the claims of a particular class, the plaintiffs' claims ultimately could be resolved on the basis of common evidence such as the drivers' Operating Agreement with FedEx and commonly applicable FedEx policies. Critical in those decisions was whether a particular state's law looked to the right to control as distinct from the actual exercise of control, and whether evidence unique to less than all drivers might affect the ultimate decision on whether a class of drivers were, under governing law, employees or individual contractors.

Class certification motions in the fourth and fifth waves are ripe for ruling. Resolution of these motions is long overdue, having been delayed by a doubling of the assigned judge's felony docket due to a district judgeship vacancy that has lasted more than twenty months. The parties have identified few issues not related to governing state law that were not addressed in the October 2007 and March 2008 orders, and the court adopts the reasoning of those orders to the extent the current motions pose the same arguments. Analysis focuses primarily on whether the substantive law governing the motion allows resolution, without extrinsic evidence, of whether the Operating Agreement and policies applicable to the entire class create an employment relationship, and whether a would-be employer's conduct can convert an employment relationship (as defined in the employment contract) into an independent contractor relationship.

The plaintiffs moved for oral argument on the fourth wave motions. The court has been able to work through those motions without argument, so the court denies that motion as moot.

## Arizona (*Gibson*)

Named Arizona plaintiffs Margaret Gibson, Don Olsen, Solomon Rachmin, and Joe Shipp bring claims for illegal wage deductions, ARIZ. REV. STAT. § 23-352, rescission, declaratory relief, and injunctive relief. Joe Shipp is a driver for FedEx Home. Margaret Gibson, Don Olsen, and Solomon Rachmin are former drivers for FedEx Home. They seek to represent the following class.

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES) and/or provided or will provide package pick-up and delivery services pursuant to an executed Operating Agreement; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 11, 2004, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Arizona.

When the motion was filed, this class would have included at least 197 drivers.

FedEx opposed class certification because (among other reasons adequately discussed with respect to other states) individualized evidence would be needed to evaluate the extent of actual control, each driver's intent, the method of payment and furnishing of equipment, the right to hire and fire, and the characteristics of each driver's business operations.

The Arizona wage deduction statute protects employees, and define as

3

"employee" as "any person who performs services for an employer under a contract of employment wither made in this state or to be performed wholly or partly within this state." ARIZ. REV. STAT.§ 23-350(2). In deciding whether an agent is an employee or an independent contractor, Arizona law looks to the principal's right to control the agent or supervise the method of reaching a specific result. Hunt Bldg. Corp. v. Indus. Comm'n, 713 P.2d 303, 307 (Ariz. 1986). To evaluate that right to control, Arizona courts look to the totality of the circumstances, Central Mgmt. Co. v. Indus. Com's of Arizona, 781 P.2d 1374, 1376-1377 (Ariz. Ct. App. 1989), leading FedEx to argue that courts must consider the actual exercise of control in additional to any contractual right of control. FedEx has cited no Arizona case in which a lack of control in fact trumped a contractual right sufficient to establish an employment relationship.

As in other states, such as Arkansas, Arizona law looks to the factors contained in the RESTATEMENT (SECOND) OF AGENCY § 220. St. Luke's Health Sys. V. State Dept. of Law, 884 P.2d 259, 263-264 (Ariz. App. 1994). Nothing in FedEx's submission leads the court to question its holdings with respect to those states that common questions preponderate when an agent claims a contract creates such control as to make an agency one of employment when the governing state law draws on the Restatement factors.

For the reasons set forth in earlier discussions of motions to certify classes in Arkansas, Florida, Indiana, Kansas, Kentucky, Maryland, New Hampshire, New Jersey, Oregon (*Slayman*), and Rhode Island, the court GRANTS the Arizona

4

plaintiffs' motion for class certification.

## Colorado (*Flores*)

The Colorado plaintiffs seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 1, 2004, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Colorado.

The plaintiffs report that the class would consist of 228 drivers, as of the time of the motion's filing. The named plaintiffs are Horacio Flores (a former FedEx Ground driver) and Mark Niles (a current FedEx Ground driver). They seek to present claims under Colorado's illegal deductions from wages statute, COLO. REV. STAT. § 8-4-101, 105, the Colorado Consumer Protection Act, COLO. REV. STAT. § 6-1-105 *et seq.*, for rescission, and for declaratory and injunctive relief.

The court can't agree with the Colorado plaintiffs that common questions predominate in their claims under the Colorado Wage Act. Colorado Revised Statute § 8-4-101(4) creates a presumption that one who performs services for another is an employee. <u>Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Ofc.</u>, 859 P.2d 278, 281 (Colo. App. 1993). To overcome this presumption, the principal must prove that (1) the worker is free from the principal's control both under the agency agreement and in fact, and (2) the worker is customarily engaged in a trade or business related to the service performed. <u>Speedy Messenger</u>

Delivery Svs. v. Industrial Claim Appeals Ofc., 129 P.3d 1094, 1096 (Colo. App. 2005). The plaintiff drivers say FedEx won't be able to show the required lack of control under the agreement.

As under Massachusetts law considered in the second and third waves of class certification motions, Colorado law places a burden of proof on FedEx that the plaintiffs see as insurmountable. Indeed, the plaintiffs see the Colorado burden as even higher because Colorado law, as the plaintiffs understand it, will require FedEx to prove that it doesn't command when, where, and how much labor or services shall be performed—a higher burden than FedEx bears under the law of Massachusetts, or Illinois, or South Dakota, or Montana.

The Colorado plaintiffs might be right that FedEx won't be able to manage such a showing, but the court can't decide that issue at this stage of the proceedings. The court must focus instead on what would happen if FedEx makes that showing—which would result in two additional hurdles for FedEx, both of which would require proof outside the Operating Agreement and commonly applicable policies. FedEx would be entitled to present evidence from the field rather than the Operating Agreement to prove that the drivers are free from FedEx control in fact (and the drivers would be entitled to present proof to the contrary). Whether a driver is (or, with respect to former drivers, was) customarily engaged in a trade or business related to the driver's work for FedEx necessarily would require examination of each of the 228 drivers.

As a practical matter, since any of the three issues might be dispositive, all

likely would be briefed together for summary judgment purposes. Thus, even if the Colorado drivers are correct that FedEx can't show their freedom from control under the Operating Agreement, the other issues (and the individual and field-based proof those issues entail) likely would be part of the summary judgment inquiry. Right to control under the Operating Agreement is not a preponderant issue.

The Colorado plaintiffs' remaining claims flow from the contention that the Operating Agreement's description of the drivers as independent contractors is, given the Agreement's other terms, false or against public policy. Given the centrality of the Wage Act claim to those arguments, the same analysis applies.

The court denies the Colorado plaintiffs' motion for class certification.

## Connecticut (*Magno*)

Named Connecticut plaintiffs Thomas Magno and Neville Edwards bring claims for violation of the Connecticut minimum wage act, rescission, *quantum meruit*, unjust enrichment, declaratory judgment, and injunctive relief. They seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 22, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Connecticut.

They seek to certify the following sub-class under FED R. CIV. P. 23(b)(3) for unpaid

overtime in violation of Connecticut Minimum Wage Act:

> All persons who: (1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); (2) drove or will drive a vehicle over forty hours per week at any time during the class period to provide package pick-up and delivery services pursuant to the Operating Agreement; (3) at any time after August 10, 2005, operated vehicles with a gross vehicle weight rating of less than 10,001 pounds; and (4) were dispatched out of a terminal in the state of Connecticut.

The named plaintiffs are current drivers for FedEx Home. At the time of the class certification motion, there were 168 drivers in Connecticut.

FedEx argues that the named plaintiffs don't adequately represent Connecticut drivers. The court rejected that argument with respect to other states, and finds the argument no more persuasive as to the Connecticut drivers.

At least with respect to the claims under the state's minimum wage act, CONN. GEN. STAT. §§ 31-71a-71i, Connecticut uses the "ABC" test in which the putative employer must prove that a) the agent is, was, and will be free from the principal's control and direction in the performance of duties, both under the contract and in fact, b) the service is performed either outside the usual course of the principal's business or outside all the principal's places of business; and c) the agent is customarily engaged in an independently established trade occupation, profession or business of a sort that involved in the service provided. Tianti v. William Raveis Real Estate, Inc., 651 A.2d 1286, 1290 n.8 (Conn. 1995). The plaintiffs speak of a common law test concerning some of their other claims, but the cited cases give the court no sound basis to believe Connecticut applies

different tests for different purposes when workers would be covered by the minimum wage act.

As has been explained in greater detail with respect to other states that use similar tests that place burdens on the putative employer to prove a variety of things in addition to lack of contractual control, the court can't limit FedEx's proof to the operating agreement and commonly applicable policies. To prevail on the named plaintiffs' claims under Connecticut law, FedEx will have to prove much more than simply lack of contractual control, including lack of control in fact and the nature of each driver's customary work. The plaintiffs might be correct that FedEx can't prove lack of control under the contract, and so will fail in its ultimate burden of proof. Or the plaintiffs may be wrong. Today is not, however, the occasion to evaluate the sufficiency of FedEx's ultimate proof.

The court can't say that the case will be limited to common proof. The potential for extensive individualized evidence makes a class action inappropriate for the would-be Connecticut class. The court DENIES the Connecticut plaintiffs' motion for class certification.

## FLSA (*Givens*)

The <u>Givens</u> plaintiffs seek to certify the following class for conditional certification:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle over forty

hours per week at any point during the class period to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) operated, at any time after August 10, 2005, vehicles with a gross vehicle weight rating of less than 10,001 pounds; and 4) are not members of any state law overtime class certified under Federal Rule of Civil Procedure 23.

The named plaintiffs, Troy Givens, Clarence Dalcour, Wesley C. Martin, Devon Nugent, Melissa Rohman, and Ralph Carl Veal, were pickup and delivery drivers for FedEx Ground who drove vehicles weighing less than 10,001 pounds between August 10, 2005 and the present. They claim FedEx misclassified them as independent contractors rather than employees and so violated the overtime compensation provisions of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 206(b) and 207(a)(1). The plaintiffs bring this action on behalf of themselves and all other similarly situated pickup and delivery drivers who operated vehicles weighing less than 10,001 pounds since August 10, 2005 who are not already protected by a state overtime statute and who are not subject to the Motor Carrier Safety Act ("MCSA") exemption to the FLSA's overtime requirements.[1] When the *Givens* plaintiffs filed their motion, they estimated between 1,000 and 1,500 putative collection action plaintiffs could join in this FLSA action.

Under § 216(b) of the FLSA, an employee may bring a collective action on behalf of himself and "other employees similarly situated" to recover unpaid overtime compensation; however, "[n]o employee shall be a party plaintiff to any

---

[1] Therefore, the plaintiffs don't intend this collective action to encompass any state where a state overtime claim for this subset of drivers is certified for class treatment under Rule 23.

such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Such an action is known as a collective action, <u>Harkins v. Riverboat Servs., Inc.</u>, 385 F.3d 1099, 1101 (7th Cir. 2004) and is intended to avoid a multiplicity of duplicate actions and to promote the FLSA's broad remedial goals. <u>Mares v. Caesars Entm't, Inc.</u>, 2007 WL 118877 at *2 (S.D. Ind. Jan. 10, 2007) (*citing* <u>Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 172-174 (1989)). Unlike a Rule 23 class action, when a district court decides to certify a collective action under § 216(b), it may authorize notice to potential class members to inform them of the action and allow them the opportunity to participate by "opting in." *See* <u>Id.</u> at 169-171; <u>Woods v. N.Y. Life Ins. Co.</u>, 686 F.2d 578, 580 (7th Cir. 1982) (stating that the court in a FLSA collective action has a "modest duty and power . . . to regulate the content and distribution of the notice to potential class members.").

In deciding whether to certify a Section 216(b) collective action, the court must first consider whether the named plaintiffs have made an initial showing that they are similarly situated to the employees whom they seek to represent. <u>Mares v. Caesars Entm't, Inc.</u>, 2007 WL 118877 at *2. While neither the FLSA, the Supreme Court, nor the Seventh Circuit have provided guidance on how to determine whether the representative plaintiffs are "similarly situated" to the potential plaintiffs, district courts in the Seventh Circuit have adopted a two-step approach. *See* <u>id</u> (*citing* <u>Austin v. CUNA Mut. Ins. Soc'y</u>, 232 F.R.D. 601, 605 (W.D. Wisc. 2006); <u>Veerkamp v. U.S. Sec. Assocs., Inc.</u>, 2005 WL 775931 at *2 (S.D. Ind.

Mar. 15, 2005)). First, the representative plaintiffs must "demonstrate a reasonable basis for believing that [they are] similarly situated to potential class members." Austin v. CUNA Mut. Ins. Soc'y, 232 F.R.D. at 605. Second, "if the plaintiffs make this showing, the court conditionally certifies the class, authorizes notice, and the parties conduct discovery." Id. At the close of discovery, the defendant may move for decertification, at which point the court examines in detail the evidence and arguments submitted by the parties on the question of similar situation and may dismiss certain plaintiffs without prejudice or decertify the entire class. Id.

To meet their burden at the conditional certification stage, the representative plaintiffs must show the existence of employees with similar positions. See e.g., Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002); see also Belbis v. County of Cook, 2002 WL 31600048, at *4 (N.D. Ill. Nov. 18, 2002) (noting that a plaintiff may demonstrate that an employees are similarly situated "by showing that the plaintiff and the proposed potential plaintiffs were victims of a common policy, plan, or practice."). According to the Givens plaintiffs, the putative class members are sufficiently similar to the named plaintiffs because they were categorically misclassified as independent contractors, are all subject to the same Operating Agreement, all routinely work overtime hours without overtime compensation, and none are members of any other state law overtime class. FedEx argues that the putative class members aren't similarly situated for a number of reasons, that the named plaintiffs are inadequate class

representatives, and that the class claims present issues which require individualized determination.

Although the requirements of Rule 23 generally don't apply to certification of an FLSA collective action, inadequacy of representation is nevertheless an equitable consideration at issue in determining whether to certify a putative class. Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 682 (D. Kan. 2004) ("Although FLSA § 16(b) does not expressly incorporate Rule 23(a)(4)'s adequacy-of-representation requirement, the adequacy of class counsel or a class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented."). Problems exist regarding the adequacy of these named plaintiffs as representatives of this putative class.

First, the original named plaintiffs, Troy Givens and Clarence Dalcour, lack standing to pursue FLSA overtime claims on a representative basis because they don't meet the proposed class definition. Neither Mr. Givens nor Mr. Dalcour drove vehicles weighing less than 10,001 pounds after August 10, 2005. They both drove P-1000 trucks, which have a gross vehicle weight of more than 10,001 pounds. Because Mr. Givens and Mr. Dalcour don't meet the class definition and are exempt from overtime under the FLSA, they aren't similarly situated to the putative class members they seek to represent. 29 U.S.C. § 213(b)(1). Therefore, the named plaintiffs don't have standing to pursue FLSA claims on behalf of the putative class. *See* O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (holding that

there "must be a personal stake in the outcome" . . . such that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class") (citations omitted).

The plaintiffs try to remedy this problems by arguing that drivers who have filed consents to join the class may serve as additional named plaintiffs in the collective action. The plaintiffs haven't sought to amend their complaint to add these individuals, *see* Harkins v. Riverboat Servs., Inc., 2002 WL 32406581, at *5 (N.D. Ill. May 17, 2002) ("The filing of a written consent in and of itself is insufficient to join [a Section 216(b)] lawsuit."), so the consenting drivers aren't named class representatives. *See, e.g.,* Becker v. S. Soils, 2006 WL 3359687, at *1, n.1 (M.D. Fla. Nov. 20, 2006) (holding that leave to amend the complaint was required to add individuals as named plaintiffs to FLSA collective action).

Second, the *Givens* complaint asserted FLSA claims on behalf of a nationwide class of drivers, and the plaintiffs later moved the court to toll the statute of limitations on those nationwide claims. In their motion for certification of a collective action, however, the *Givens* plaintiffs define the proposed class as consisting of drivers who are not already protected by a state overtime statute, effectively abandoning the claims of the nationwide class as originally defined in the complaint. As a result, the named plaintiffs have created a conflict of interest between themselves and the putative class, who might stand to benefit from the abandoned claims. Therefore, class certification is inappropriate based on the

named plaintiffs' inability to adequately represent the class as a whole. *See* <u>In re Universal Serv. Fund Telephone Billing Practices Litig.</u>, 219 F.R.D. 661, 668 (D. Kan. 2004) (explaining that case law exists to support the proposition that certification is inappropriate where the class representatives opt to pursue certain claims on a class-wide basis while jeopardizing the class members' ability to subsequently pursue other claims).

Moreover, to determine the employment status of the putative class members, the FLSA requires the court to apply an economic realities test, rather than considering the common law concepts of "employee" and "independent contractor." <u>Sec'y of Labor v. Lauritzen</u>, 835 F.2d 1529, 1534 (7th Cir. 1987). In doing so, the court must focus on the economic realty of the nature of the working relationship, requiring a consideration of all the circumstances of the work activity, not just one isolated factor. <u>Id.</u> (*citing* <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 730 (1947)); *see also* <u>Vanskike v. Peters</u>, 974 F.2d 806, 808 (7th Cir. 1992) ("status as an 'employee' for purposes of the FLSA depends on the totality of the circumstances rather than on any technical label."). Among the criteria considered are: 1) right to control; 2) opportunity for profit or loss; 3) investment in equipment or materials required for employment; 4) the degree of skill required; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the employer's business. <u>Sec'y of Labor v. Lauritzen</u>, 835 F.2d at 1535. Accordingly, the court must take into consideration the actual history of the

parties' relationship, necessitating an individualized examination of the multiple factors relating to each drivers' employment. Because the evidence pertaining to such factors varies in material respects throughout the proposed class, there is a lack of substantial similarity among the putative class members sufficient to justify treatment as a collective action. *See* Reich v. Homier Distr. Co., Inc., 362 F. Supp. 2d 1009, 1013-1014 (noting that "[m]any other courts, both in this circuit and others, have declined to find potential class members similarly situated where liability depended on an individual determination of each employee's duties) (*citing* Pfaahler v. Consultants for Architects, Inc., 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) ("[T]he court would be required to make a fact-intensive, individual determination as to the nature of each claimant's employment relationship . . . Where this is the case, certification of a collective action under the FLSA is inappropriate.")).

Accordingly, the court denies the *Givens* plaintiffs' motion for conditional certification of a collective action under the FLSA [Doc. No. 873]and denies both the plaintiffs' motion to equitably toll the statutory requirements of 29 U.S.C. § 255(a) [Doc. No. 825] and FedEx's motion to strike late-filed Givens plaintiffs' reply brief in support of their motion to equitably toll the statutory requirements of 29 U.S.C. § 255(a) [Doc. No. 857] as moot.


### Georgia (*White*)

The Georgia plaintiffs seek to certify the following class:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and Form OP 149 RES) and/or provided or will provide package pick -up and delivery services pursuant to an executed Operating Agreement; 2) drove or will drive a vehicle on a full -time basis (meaning exclusive of time off for commonly excused employment absences) since July 26, 200 1, to provide package pick -up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Georgia.

The named plaintiffs are a former FedEx FXG Ground driver and a current FedEx Home driver. They estimate the size of the class as 388, at the time of the motion. The named class representative is Earnest White, who formerly drove for FedEx Ground. FedEx argues that Mr. White is an inadequate class representative because he lacks standing to seek future relief, because he cannot adequately represent a class that includes current FedEx Ground drivers and current and former FedEx Home drivers, and because the circumstances of his departure make him an inappropriate class representative.

The court has addressed the first two objections to adequacy as a class representative with respective to classes in other states, but hasn't considered the third objection. That objection is based on the proposition that Mr. White's ill will toward FedEx will keep him from representing the proposed class adequately. The court is unpersuaded that Mr. White's feelings toward his former employer will interfere with his ability to make litigation decisions on the class's behalf, and overrules that objection.

FedEx also argues that Georgia law presumes a contractual designation of a worker's status to be correct, and that the worker must overcome that

presumption by showing that the principal actually assumed control—control in every detail of how the worker performs the job—over the time, manner, or method of doing the job. The plaintiffs argue that Georgia law looks to the right to control, rather than to actual control.

The parties cite almost exclusively to decisions of the Court of Appeals of Georgia, and provide the court with no reason to think the state supreme court would view the law any differently than the intermediate court of appeals. The most recent of the parties' principal citations (and one of the authorities FedEx cites in support of its reading of Georgia law) is Teachers' Retirement Sys. v. Forehand, 506 S.E.2d 913 (Ga. App. 1998). After retiring as superintendent of a school system and beginning to draw retirement benefits, David Forehand was called back into service as a consultant, to hold a different school system together while the school system sought a new superintendent. The contract described Mr. Forehand as an independent contractor; were he an employee, his retirement benefits would be suspended. The trial court found that Mr. Forehand was an independent contractor—as the contract said—because the school board had no right to control the time, manner, and method of his work. The retirement board appealed, and the court of appeals affirmed.

Quoting from McGuire v. Ford Motor Credit Co., 290 S.E.2d 487 (Ga. App. 1982), the court of appeals cited the language FedEx notes: "'Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the

employer assumed such control.'" 506 S.E.2d at 917. The court of appeals looked at other factors—who paid the respective shares of the Social Security contribution, who paid the federal taxes, whether there was unemployment compensation, worker's compensation, or medical insurance, whether sick leave was accrued, whether there was tenure or a multi-year contract, and whether the contract was terminable for disability or illness—and concluded that the facts didn't convert the relationship to one of employer-employee.

Georgia's presumption in favor of the contractually defined relationship dates back more than half a century. In Morris v. Constitution Pub. Co., 67 S.E.2d 407 (Ga. App. 1951), the plaintiff had injured herself when she tripped over a bundle of newspapers a news carrier left in the entryway to the plaintiff's home, and the plaintiff sued the publisher. The publisher's contract with the carrier stated that the carrier was an independent contractor. The court of appeals stated (in language that appears to place a heavier burden on the party claiming an employment relationship than that of coming forward with evidence to the contrary), "that relation is presumed to be the true one unless the evidence shows that the employer assumed some control over the time, manner or method of doing the work despite the provisions of the contract to the contrary." 67 S.E.2d at 409. The court of appeals reviewed evidence of the actual relationship between the carrier and the publisher, and found that it didn't contradict the contract's definition of the relationship. The carrier was an independent contractor.

Mark Six Realty Assoc., Inc. v. Drake, 463 S.E.2d 917 (Ga. App. 1995), was

a homeowner's breach of warranty claim in which the homeowner sought to hold Mark Six, a realty company (among many others) liable for the wrongdoing of a salesperson (Matsis) associated with the company. Mark Six contended that Ms. Matsis was an independent contractor. The contract said Ms. Matsis was an independent contractor, placing the burden on the homeowner to rebut the presumption that the contract was right, by "showing that [Mark Six[ in fact assumed control over the time, manner, and method of [Ms. Matsis's] work performance." 463 S.E.2d at 919. Mark Six had required that Ms. Matsis work exclusively for Mark Six during the life of the contract, work specified hours (Mark Six designated another person to be present when Ms. Matsis was absent), following Mark Six procedures when negotiating a sale, use standard forms Mark Six provided, and work with a Mark Six account executive. Ms. Matsis also was subject to quarterly performance reviews by a Mark Six sales manager, who was authorized to make changes as necessary. The opinion leaves it unclear whether these indicia of control were found in the contract between Mark Six and Ms. Matsis, or simply were the way things were done.

The court of appeals described these facts as "some evidence . . . Mark Six retained the right to and did, in fact, exercise control over the time, manner, and method of Matsis' performance of her duties." 463 S.E.2d at 920. Because the case was before the court on appeal of a jury verdict in the homeowner's favor, no further analysis was required; that evidence sufficed to support the verdict against Mark Six.

Brown v. Who's Three, Inc., 457 S.E.2d 186 (Ga. App. 1995), reached the court of appeals from a grant of summary judgment to a hair salon on a customer's personal injury claim, based in part on the trial court's holding that an apprentice facial esthetician named Linda Al-Ansari was an independent contractor rather than the salon's employee. The salon's agreement with Ms. Al-Ansari described her as an independent contractor. The court of appeals said nothing about any presumption; the court didn't even mention the agreement until the end of its discussion. As the plaintiffs note, the court of appeals said instead, "Under Georgia law, any contractual characterization of the relationship is not controlling, and the fact-finder is entitled to look beyond the terms of any contract to the parties' behavior in order to determine the true nature of the relationship." 457 S.E.2d at 191. The court of appeals began its analysis by noting that the term "apprentice" ordinary connotes the master-servant relationship more akin to employment that an independent contract. The court further noted that Ms. Al-Ansari couldn't act legally as an independent contractor, because she didn't have the license required to work independently as an esthetician; she was required to apprentice under a licensed esthetician or cosmetologist. The court noted that the salon exercised control over Ms. Al-Ansari's methods and means by approving the table she used. Based on the licensing laws, the traditional view of apprenticeship, and the salon's exercise of some control, the court of appeals concluded that Ms. Al-Ansari was the salon's employee.

The plaintiffs also cite language from Keefe v. Carpet & Upholstery Cleaning

by Houndstooth, Inc., 444 S.E.2d 857 (Ga. App. 1994), but that case provides little beyond the language cited. The Keefes had called Carpet & Upholstery to clean their carpet, and Marion Johnson showed up to do the work. Mr. Keefe slipped and fell on water Mr. Johnson had left on the floor, and the Keefes sued Carpet & Upholstery, which claimed Mr. Johnson was an independent contractor. The trial court granted partial summary judgment to Carpet & Upholstery. In the course of discussing the Keefes' apparent authority argument, the court of appeals noted that a trier of fact could find that Carpet & Upholstery distributed jobs to carpet cleaners, provided the cleaners with business cards, told the cleaners to identify themselves as being "with" Carpet & Upholstery, and required the cleaners to use Carpet & Upholstery invoice forms that required checks to be made payable to Carpet & Upholstery. The court of appeals' full discussion actual agency contains the language the plaintiffs cite to this court, but not much more:

> 2. Turning to the question of whether Marion Johnson was an actual agent of defendant, we find that the traditional or "true" test of whether a person is a servant or an independent contractor has been stated in terms of whether the employer has the right to direct the time, the manner, the methods, and the means of execution of the work, as contrasted with the right to insisting upon results according to specifications of the contract. Other cases rely upon the list of 10 factors to be considered pursuant to Restatement of Agency 2d, § 220(2). Applying the factors from both of these tests to the uncontroverted facts in the cases sub judice, we do not find that either alternative answer is compelled by the evidence. Therefore, we conclude that the state court did not err in denying defendant's motion for summary judgment on the issue of actual agency.

444 S.E.2d at 859 (citations omitted). The court made no mention of any written contract between Carpet & Upholstery and Mr. Johnson, much less whether such

a contract designated Mr. Johnson as an employee or an independent contractor.

In Murphy v. Blue Bird Body Co., 429 S.E.2d 530 (Ga. App. 1993), Blue Bird contacted Michael Jenkins to fix a suction fan in a Blue Bird plant, and Mr. Jenkins hired James Murphy to do the job. Mr. Jenkins used a forklift to raise Mr. Murphy to fan level, and Mr. Murphy fell and was injured. Mr. Murphy sued Blue Bird, contending that Blue Bird exercised sufficient control over Mr. Jenkins to make Mr. Jenkins Blue Bird's employee. The court of appeals turned to the ten RESTATEMENT (SECOND) § 220(2) factors and ultimately concluded that Mr. Jenkins acted as an independent contractor on day Mr. Murphy held. The court made no reference to any written contract between Blue Bird and Mr. Jenkins.

Similarly, interesting language but little guidance is found in Hall v. Buck, 426 S.E.2d 586 (Ga. App. 1992), which was (in pertinent part) an appeal from a jury verdict against the owner of a trailer filled with logs, whose driver collided with another motorist. The trailer owner (A & G Timber Company) argued that it should have been directed out because the plaintiff presented too little evidence to support *respondeat superior* liability. The court of appeals briefly summarized the evidence of A & G's control over the driver, then quoted language from an earlier case: "'Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, *it is inferable that the employer has retained the right to control the manner, method and means of the performance of the contract, and that the employee is not an independent contractor.* The test is not whether the

23

employer did in fact control and direct the employee in the work, but it is whether the employer had that right under the employment contract.'" 426 S.E.2d at 591, quoting Atlanta Braves v. Leslie, 378 S.E.2d 133 (1989) (emphasis supplied by Hall court). Since the FedEx drivers have a specific contract, Hall is of limited help.

FedEx, then, is correct that the provision in its Operating Agreement establishes a rebuttable presumption that its drivers are independent contractors, thus placing a burden on the plaintiffs to come forward with evidence to the contrary. The plaintiffs already have indicated the evidence to the contrary they intend to use: other provisions of the Operating Agreement and generally applicable FedEx policies. At that point, the issue under Georgia law will become the same one that has to be resolved in states in which the court has certified classes—whether FedEx has the right, with respect to the class of drivers as a whole, to control the methods, manners, and means by which the drivers perform the contracted tasks, such as to make the drivers employees rather than the independent contractors the Operating Agreement declares. As is true in other states in which the court has certified classes, that issue will turn on the ten-factor test of RESTATEMENT (SECOND) OF AGENCY § 220(2).

Georgia's rebuttable presumption creates a procedural sidetrack unique from the other states, but ultimately, whether the plaintiff drivers are employees rather than individual contractors can be resolved by common facts. The court grants the plaintiff drivers' motion to certify the proposed Georgia class.

### Louisiana (*Boudreaux*)

The Louisiana plaintiffs seek to certify a damages class under Federal Rule of Civil Procedure 23(b)(3) as to their claims for rescission (third cause of action), violation of Louisiana Revised Statute §§ 23:631 and 23:634 (fourth cause of action), violation of Louisiana Revised Statute § 23:635 (fifth cause of action), violation of Louisiana Revised Statute § 23:963 (seventh cause of action), breach of the covenant of good faith and fair dealings (eighth cause of action), and declaratory relief (ninth cause of action), for the following defined class:

> All persons who, at any time after February 8, 2002, entered into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES) and drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services in Louisiana pursuant to that Operating Agreement.

The plaintiffs also seek to certify a non-damages class under Rule 23(b)(2) for their ninth cause of action seeking declaratory relief, for the following defined class:

> All persons who have since February 8, 2002, entered, or will enter, into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as Form OP-149 and form OP-149 RES) and currently drive, or will drive, a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services pursuant to that Operating Agreement.

When the class certification motion, there were more than 150 FedEx drivers in Louisiana. Plaintiffs Ryan Boudreaux and Timothy Bellow are former

FedEx Ground drivers in Louisiana.[2] Both performed services for FedEx under the standard Operating Agreement at issue in the Kansas class certification and are subject to FedEx's standardized policies and procedures. To succeed on their claims, the Louisiana drivers will need to show, first, they were FedEx employees rather than independent contractors and second, that they are entitled to relief pursuant to the various Louisiana statutes and common law theories they assert.

FedEx argues that the Louisiana plaintiffs are inadequate class representatives because the Louisiana drivers are so varied, but the court rejected similar arguments in the October 15 and March 25 orders and does so again here for the same reasons. FedEx also contends that a class action isn't the superior method for litigating the claims of each potential class member because there is no manageable definition of "full-time" driver and the plaintiffs didn't present a trial plan. Again, the court previously addressed, and rejected, similar arguments in its March 25 order, and does so again here.

Like most of the other motions for class certification, the Louisiana plaintiffs' claims hinge on whether FedEx misclassified its drivers as independent contractors. FedEx argues that Louisiana law requires individualized evidence to resolve the issue of independent contractor status, so class certification isn't appropriate. FedEx acknowledges that Louisiana utilizes a "right to control" test,

---

[2]As FedEx points out, the Louisiana plaintiffs state in their memorandum that Mr. Bourdeaux is a former Home Delivery driver, but in Mr. Bourdeaux's certification, it states that he was a contractor for Federal Express Ground. Unfortunately, the plaintiffs don't clarify this fact in their reply brief; the court finds it appropriate to rely on the statement in Mr. Bourdeaux's certification.

but says Louisiana's application of this factor reveals that the actual experiences of each contractor will need to be examined. The court disagrees.

In <u>Hickman v. S. Pac. Transport Co.</u>, 262 So.2d 385, 390-391 (La. 1972), the court found the following factors relevant in determining whether an independent contractor relationship existed: (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the individual's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. This test is appropriate in claims arising under Louisiana Revised Statute § 23:631. <u>Gordon v. Hurlston</u>, 854 So. 2d 469, 472 (La. App. 3 Cir. 2003). The court should also consider the lack of tax withholdings, social security deductions, and typical employee benefits as indicators of independent contractor status. <u>Knapp v. The Mgmt. Co.</u>, 476 So. 2d 567, 569 (La. App. 3 Cir. 1985); <u>Course v. Fox Wolff Const.</u>, 987 So. 2d 277, 280 (La. App. 5 Cir. 2008).

The principal test is the control over the work reserved by the employer. <u>Hickman v. S. Pac. Transport</u>, 262 So.2d at 391; *see also* <u>Glover v. Diving Servs. Int'l, Inc.</u>, 577 So. 2d 1103, 1106 (La. App. 1 Cir. 1991). "Whether an individual

is an employee or an independent contractor . . . depends primarily on the degree of control that the principal retains in the contract over the employee's work." Reynolds v. Paulson, 871 So. 2d 1215, 1218 (La. App. 4 Cir. 2004) (citation omitted). "It is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, *the right to do so exists*." Hughes v. Goodreau, 836 So. 2d 649, 656 (La. App. 1 Cir. 2002) (emphasis in original) (citations omitted); *see also* LeCroy v. Interim Health Care Staffing of North Louisiana, Inc., 980 So. 2d 838, 842 (La. App. 2 Cir. 2008). Factors to consider when assessing the right to control include "the selection and engagement of the worker, the payment of wages and the power of control and dismissal." Glover v. Diving Servs., 577 So. 2d at 1106 (*citing* Savoie v. Fireman's Fund Ins. Co., 347 So. 2d 188 (La. 1977)); *see also* LeCroy v. Interim Health Care Staffing, 980 So. 2d at 842.

FedEx contends that while the right to control is important, Louisiana courts also consider actual control. FedEx notes that in Hickman v. S. Pac. Transport the court stated that "[t]he legal relationship between [the parties] is to be determined from the contract between them and from their intentions in establishing and carrying out that relationship as manifested in its performance and the surrounding circumstances." 262 So. 2d at 390. FedEx notes that courts have looked at actual evidence of control to find a disputed question of fact of employee status even though the agreement established an independent contractor relationship, Honeycutt v. Deutschmann, 976 So. 2d 753, 755-756 (La.

App. 5 Cir.), *writ not considered*, 978 So. 2d 338 (La. 2008), and have looked at actual evidence of control to support a finding that an employee relationship existed even though the contract reserved the right to control, <u>Glover v. Diving Servs.</u>, 577 So. 2d at 1106. The court doesn't read those cases as supporting the proposition that when the contract establishes a right to control the court can disregard the contractual terms in light of the actual control exercised.

FedEx further contends that the control test requires determination of individualized questions of fact, such as the sequence of deliveries, the work schedule and hours, supervision, and provision of tools and equipment. As already addressed, the right to control relating to these factors can be determined by examining common evidence. The Louisiana drivers argue that the Operating Agreement and commonly applicable FedEx policies reserve to FedEx the right to control, making the drivers FedEx employees. The extent to which FedEx exercised its right to control with respect to any given employee won't change the employee-independent contractor analysis: while one might become an employer by exercising more authority than is contractually granted, FedEx has cited no authority that forbearance of the exercise of contractually granted power to control affects the analysis. FedEx's cited cases don't support its argument that Louisiana courts will look beyond a written contract that would have created an employment relationship to find independent contractor status based on actual control. *See e.g.*, <u>Adams v. Greenhill Petroleum Corp.</u>, 631 So. 2d 1231, 1234-1235 (La. App. 5 Cir. 1994) (relying on evidence showing right to exercise control as opposed to

evidence showing lack of actual control in determining employment status). FedEx raises several concerns involving plaintiffs' intention to utilize individualized evidence to support their claims, but as indicated in the March 25 order, if the drivers intend to offer individualized evidence to establish liability, the court will reexamine class certification.

FedEx next argues that beyond the right to control, additional factors require evaluation of individual evidence—the existence of a valid contract and specific price for the overall undertaking. FedEx hasn't disputed the validity of its agreement. The plaintiffs don't dispute the validity of the agreement for purposes of determining employee status; they contend that the right to control in the agreement establishes an employee-employer relationship and not the independent contractor relationship the agreement claims to establish. Louisiana courts have found that even if the contract recites that the parties have entered into an independent contractor relationship, that term isn't necessarily controlling where other terms in the contract establish an employee relationship. *See* Arroyo v. East Jefferson General Hosp., 956 So. 2d 661, 664 (La. App. 5 Cir.), *writ denied*, 957 So. 2d 179 (La. 2007) (stating that the existence of an independent contractor agreement isn't necessarily dispositive of the issue of employment status). The agreement's validity for determining employment status requires no individualized determinations.[3] The specific price for the overall undertaking can be evaluated

---

[3]The plaintiffs' claim that the Operating Agreement is invalid and should be rescinded because the drivers are employees is a separate issue that will be addressed

by examining the agreement and policies and common evidence applicable to the class members. The schedule, calculation, and manner of payment can be determined from the Operating Agreement. Whether the employee received a large portion of compensation from "core zone" payments can be examined by categorical determinations as opposed to individualized analysis. *See e.g.,* Kibodeaux v. Progressive Ins. Co., 4 So. 3d 222, 226 (La. App. 3 Cir. 2009), *writ denied*, 6 So. 3d 794 (La. 2009) (examining the structure and timing of payments after noting that the test calls for a specific price for an *overall* undertaking).

FedEx further argues that even if the employment status issue can be resolved on a class-wide basis, the plaintiffs' substantive causes of action need individualized analysis. The plaintiffs seek class certification on their fourth cause of action for violations of §§ 23:631 and 23:634 of Louisiana Revised Statute. Section 23:631 requires earned wages to be paid to former employees on or before the next regular payday or no more than fifteen days after discharge or resignation, whichever occurs first. LA. REV. STAT. § 23:631. Section 23:632 provides that any employer who doesn't comply with section 23:631 is liable to the employee for the lesser of ninety days' wages at the employee's daily rate of pay, or full wages from the time the employee's demand for payment is made until the employer tenders payment. LA. REV. STAT. § 23:632. Section 23:634 prohibits an employment contract that requires the forfeiture of "wages" upon an employee's

---

only if the court finds that the right to control in the agreement and policies establishes an employee-employer relationship.

resignation or discharge. LA. REV. STAT. § 23:634. FedEx contends that the drivers'

recovery on their fourth cause of action depends on when (if at all) each former

driver demanded payment and when they received final settlement.

The court understands the plaintiffs' argument to be that if the drivers are

deemed "employees," they are entitled to certain wages that must be paid upon

discharge or resignation pursuant to § 23:631. These are "wages" that weren't paid

to terminated employees because of FedEx's alleged wrongful classification of the

drivers as independent contractors.[4] Section 23:631 doesn't require that the

employee first demand payment to recover unpaid wages. The demand for

payment may become relevant for determining penalties under § 23:632, but

"[w]hen a defendant denies liability after suit is filed, technical deficiencies in a

pre-suit demand are waived by him and will not defeat imposition of statutory

penalties designed to enforce prompt payment." Carriere v. Pee Wee's Equip. Co.,

364 So.2d 555, 557 (La. 1978); *see also* M & D Simon Co. v. Blanchard, 389 So.2d

401, 403 (La. App. 4 Cir. 1980) (indicating that lack of demand can be remedied

by filing suit). The issue of demand can be addressed by categorical evidence

common to the class.

"[A] good-faith non-arbitrary defense to liability for unpaid wages, i.e., a

reasonable basis for resisting liability," can "excuse the employer from the

---

[4]The plaintiffs should notify the court immediately if this understanding is
incorrect. To the extent the plaintiffs intend to assert that individual plaintiffs weren't
paid their final settlement payments under the terms of the Operating Agreement,
such claims would require individualized analysis and are not suitable for class
certification.

imposition of additional penalty wages." <u>Carriere v. Pee Wee's Equip.</u>, 364 So.2d at 557. "Where there is a bona fide dispute over the amount of wages due, courts will not consider failure to pay as arbitrary refusal and generally will refuse to award penalties." <u>Winkle v. Advance Prod. & Sys., Inc.</u>, 721 So.2d 983, 991 (La. App. 3 Cir. 1998) (citations omitted). "Reliance on an unlawful company policy however does not constitute a good faith non-arbitrary defense to liability for unpaid wages." <u>Beard v. Summit Inst. of Pulmonary Medicine and Rehab., Inc.</u>, 707 So.2d 1233, 1237 (La. 1998) (addressing a situation where the employer attempted to rely on a policy despite the plethora of cases finding that similar policies violated the statute). FedEx contends that it wasn't required to pay "wages" to the drivers because they were independent contractors. Whether this is a good-faith non-arbitrary defense can be determined on a class-wide basis.

FedEx notes that § 23:631 doesn't apply to members of the putative class who continue to contract with FedEx; § 23:361 applies only to drivers who have been discharged or resigned. The plaintiffs' class definition for this claim includes both current and former drivers and is therefore too broad. A "class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated." <u>O'Neill v. Gourmet Sys. of Minnesota, Inc.</u>, 219 F.R.D. 445, 451 (W.D. Wis. 2002) (citation omitted). To obtain certification for this claim, the plaintiffs must define a sub-class that includes only those drivers that can seek relief pursuant to § 23:631.

The plaintiffs' fifth cause of action for illegal deduction pursuant to

Louisiana Revised Statute § 23:635 prohibits employers from "assess[ing] any fines against [its] employees or deduct[ing] any sum as fines from their wages." LA. REV. STAT. § 23:635. FedEx notes that this statute doesn't generally prohibit deductions from wages, but only those deductions that are made to punish or penalize. Samson v. Appollo Res., Inc., 242 F.3d 629, 637 (5th Cir. 2001) (applying Louisiana law). "The few cases discussing § 23:635 restrict employers from levying fines on the employee (via deduction from wages) for failing to follow workplace procedures and regulations." Id. at 637-638 (finding no fine where the deductions weren't arbitrarily fixed and assessed as punishment against the employee for violating a workplace rule or regulation). Further, an employer may deduct the actual cost of damage to the employer's property as a result of the willful or negligent conduct of an employee. Cupp v. Banks, 637 So. 2d 678, 679 (La. App. 2 Cir. 1994); LA. REV. STAT. § 23:635 ("This section shall not apply in cases where the employees willfully or negligently damage goods or works, or in cases where the employees willfully or negligently damage or break the property of the employer . . .")

The plaintiffs seem to argue that only one type of FedEx deduction—cargo claims—violates this Louisiana law. They allege in their complaint that "[d]rivers are subject to deduction from their earned wages of the value of any package lost or stolen or damaged . . . . These deductions are taken without a finding of negligence or fault on the part of the driver and despite the driver following all company policies regarding the care and security of packages." (document # 1647-

5, ¶ 108 ). FedEx argues that a finding of liability pursuant to § 23:635 will require individualized analysis as to whether each cargo claim was assessed by FedEx as a result of negligent or willful behavior by the putative class member. The plaintiffs respond that whether FedEx's policies regarding deductions violate the Louisiana statute is a question that may be answered by examining common evidence applicable to all drivers.

The court agrees with FedEx that a finding of liability pursuant to § 23:635 requires individualized analysis to determine if FedEx deducted wages for lost or stolen packages in the absence of driver negligence or willfulness. The statute prohibits the assessment of fines and whether a deduction constitutes a fine can only be determined by examining the conduct of the individual class members. There might be cases in which FedEx properly deducted wages and other instances where it was improper. The plaintiffs contend that this can be addressed at the damages stage, but whether the deduction was proper isn't a damage issue; it's an issue of liability. Unlike simple problems of calculation of damages for a driver who worked for a known period of time, this issue can't be resolved systematically because it depends on FedEx's application of its policy to individual drivers and the drivers' conduct in each instance. The court therefore declines to certify this claim.

FedEx similarly contends that the plaintiffs' seventh cause of action arising from alleged violations of Louisiana Revised Statute § 23:963 requires individualized analysis. Section 23:963 prohibits employers from coercing or

requiring its "employees to deal with or purchase any article of food, clothing or merchandise of any kind whatsoever from any person . . . ." LA. REV. STAT. § 23:963. FedEx contends that this claim isn't founded on whether it had the right to dictate that contractors use certain vendors, but rather, whether FedEx actually coerced them. FedEx notes that the Operating Agreement is silent as to how contractors must fulfill their obligation to provide suitable vehicles and meet certain insurance requirements.

In its reply memorandum, the plaintiffs state that the evidence is undisputed that the only place for a driver to obtain a scanner or FedEx software was from FedEx, so this can be determined on a class wide basis. The plaintiffs further state that FedEx's strict requirements with regard to the specifications for trucks virtually preclude any meaningful choice as to the source of trucks. Assuming the plaintiffs' claim under § 23:963 to be limited to this theory, whether FedEx violated § 23:963 can be determined by evaluating common evidence and making categorical determinations. All employees were subject to the same requirements in the Operating Agreement and related policies. Common evidence can be reviewed to establish the availability of vendors capable of meeting these requirements, and categorical determinations can be made to determine which employees obtained equipment and supplies in compliance with the contract specifications.

FedEx also contends that the plaintiffs' third cause of action for rescission requires individualized analysis. The plaintiffs allege that the Operating Agreement

is void as being illegal or against public policy, and so should be rescinded. Louisiana Civil Code article 2030 states that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed." LA. CIV. CODE ART. 2030. The plaintiffs argue that article 2030 renders the contract absolutely null and void because it deprives the drivers of the protections Louisiana law provides to employees and unlawfully transfers the business' operating expenses to its employees.

FedEx responds that the plaintiffs' purported common evidence would, at most, only support rescission of portions of the Operating Agreement and not entitle the class to recover the entire value of their work under a theory of unjust enrichment. Article 2034 states that "[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision." LA. CIV. CODE ART. 2034. The comments to article 2034 indicate that the statute "directs the court to consider the totality of the parties' intentions before annulling the agreement when only a portion of it is null." LA. CIV. CODE ART. 2034, 1984 Revision Comment; *see also* <u>Morse v. J. Ray McDermott & Co., Inc.</u>, 344 So.2d 1353, 1358 (La. 1977) ("[A]n immoral or illegal condition within a contract annuls the entire agreement only to the extent to which the agreement depends on it." (internal quotations and citations omitted)); <u>Rathborne Land Co. LLC v. Ascent Energy, Inc.</u>, No. 05-2452, 2006 WL 2726367, at *3, 5 (E.D. La.

Sept. 22, 2006) (explaining that "dissolution of a contractual provision because it goes against public policy does not necessarily dissolve the entire contract."). The Operating Agreement contains a saving clause stating that "[i]f any part of this Agreement is declared unlawful or unenforceable, the remainder . . . shall remain in full force and effect." (document # 1647-4, ¶ 15). "[L]ike other questions of contract interpretation, whether a[n] agreement is severable is controlled generally by the intent of the parties as expressed by the contract terms and/or language." Hudson v. City of Bossier, 930 So.2d 881, 894 (La. 2006). "[T]he existence of a severability provision in a contract, while not always regarded as conclusive, will generally be given considerable weight." Id. (internal quotations and citation omitted).

The plaintiffs say that even if article 2034 applies, there is no evidence in the record that FedEx would have signed the Operating Agreement but for the misclassification, nor evidence that any Louisiana driver would have signed on to assume a truck lease payment and other obligations of the Operation Agreement but for the misclassification. The court agrees with FedEx that article 2034 applies to the plaintiffs' claim for rescission. Hudson v. City of Bossier, 930 So. 2d at 894 ("[T]hat the agreements contain a provision that is void as against public policy does not mean that the agreements are invalid in their entirety."). The plaintiffs apparently intend to argue that based on the nature of the alleged unlawful provisions, it can be inferred that FedEx wouldn't have entered into the agreement without such provisions. FedEx, though, must have the opportunity to attempt to

rebut that inference, and Louisiana law appears to allow FedEx to go outside the Operating Agreement to do so. FedEx already has come forth with individualized evidence of some drivers' intentions in other states, and no basis appears that would keep them from doing so on this Louisiana rescission claim. Class certification is inappropriate on this claim.

FedEx argues that because the plaintiffs request to certify a class beginning on February 8, 2002, the statute of limitations will bar some of their claims, but not all. The court has rejected similar arguments previously and does so again here. Individualized statute of limitations determinations weigh against certification under Rule 23(b)(3), but courts have rejected a per se rule that the presence of such issues compels a finding that individual issues predominate. *See* In re Linerboard Antitrust Litig., 305 F.3d 145, 162 (3rd Cir. 2002) ("[T]he mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.") (citations omitted). The court isn't persuaded that resolving the statute of limitations defense will require factually individualized analysis of the class members; this defense can likely be resolved by categorical determinations at the damages stage. In re Revco Sec. Litig., 142 F.R.D. 659, 663 (N.D. Ohio 1992); In re Plywood Anti-Trust Litig., 76 F.R.D. 570, 586 (E.D. La 1976).

For the foregoing reasons, the court GRANTS IN PART the Louisiana plaintiffs' motion for class certification. The motion is DENIED with respect to claims under La R.S. § 23:635, DENIED with respect to claims for rescission,

DENIED with respect to claims of current drivers under La. R.S. § 23:631, and DENIED with respect to claims under La. R.S. § 23:963 based on any theory of coercion not arising from requirements in the Operating Agreement and commonly applicable FedEx policies. The motion is GRANTED in all other respects, but the court orders the plaintiffs to, within ten days of this order, revise the class definition for claims arising under section 23:631.

## Motor Carrier Safety Act (*Vargas*)

The *Vargas* plaintiffs seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle over forty hours per week at any time during the class period to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) at any time after August 10, 2005, operated vehicles with a gross vehicle weight rating of less than 10,001 pounds; 4) were dispatched in a state for which the state's overtime law adopts the FLSA's Motor Carrier Safety Act exemption; and 5) who are not members of a certified Rule 23 state law overtime class in this MDL proceeding.

Named plaintiffs Genaro Vargas, Michael Vosbein, Tim Ketterhagen, Ya Vang, Michael Wise, Jeff Smith, and Ernest Neal III, are current and former pickup and delivery drivers for FedEx Ground. They report that when they filed their certification motion, there were several hundred drivers from twenty states (Alaska, Colorado, Illinois, Kentucky, Maine, Maryland, Massachusetts, Missouri, Montana, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Rhode Island, Vermont, West Virginia, and Wisconsin) who were

being deprived of overtime pay based on their alleged misclassification by FedEx as independent contractors. They claim FedEx violated the overtime provisions of the Fair Labor Standards Act as adopted by the twenty states in which the plaintiffs were employed, for drivers of vehicles weighing less than 10,001 pounds.

The parties dispute whether the *Vargas* complaint presents issues that are better resolved in a class action rather than in individual lawsuits. The first issue is whether FedEx misclassified its pickup and delivery drivers as independent contractors rather than employees. The second issue is whether the class members drove vehicles weighing less than 10,001 pounds during the class period in states which require overtime pay for such drivers.

The plaintiffs claim that both issues are common to all class members, reiterating their argument made in support of certification in the individual state actions—that all FedEx drivers sign the same operating agreement and are subject to the same standardized practices and policies. They contend that whether the class members are entitled to overtime pay is based on common proof because the twenty state overtime laws each require that employees receive one and a half times their normal hourly rate for each hour they work over forty per week. The plaintiffs note that the twenty named states incorporate the Motor Carrier Safety Act ("MCSA") exemption contained in the FLSA, which provides that overtime requirements don't apply to any employees with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours or service (namely any gross vehicle weight of 10,001 pounds or more). 29 U.S.C. §

213(b)(1); 49 C.F.R. § 390.5. According to the *Vargas* plaintiffs, the state laws differ only in how they incorporate the MCSA exemption.

FedEx maintains that class certification is inappropriate because of the variations in the employment status classification laws of the various states as well as the differences in the substantive state overtime laws. FedEx points out that some states apply the common law right to control test, some apply variations of the economic realities test, and others apply ABC tests or haven't yet determined the classification test to be used in regard to overtime claims. FedEx contends that these variations are material and would require a jury to determine the plaintiffs' employment status under the divergent laws of twenty states, resulting in a fundamentally unmanageable class. FedEx argues that the plaintiffs can't show that common issues predominate because of the substantial variations in the state overtime laws, including different exemptions, different definitions of hours worked, and different methods of computing overtime. Moreover, the states incorporate the MCSA exemption differently: some citing the limits on the Secretary of Transportation's authority, some citing the FLSA overtime provisions, and others citing the MCSA directly.

Although the court has certified state overtime claims for class treatment in several of the states from which the *Vargas* class would be drawn, including Kansas, California, New Hampshire, Arkansas, and Oregon, certification was based on the law of the single state at issue as opposed to the multi-state class the *Vargas* plaintiffs propose. To certify a multi-state class, the laws of the various

states at issue must be sufficiently similar to be managed in a single case. *See* Flanagan v. Allstate Ins. Co., 242 F.R.D. 421, 431-432 (N.D. Ill. 2007) (certifying multi-state class under Rule 23(b)(3) upon finding predominance requirement satisfied by the similarity between the elements of a breach of contract claim under the state laws at issue); *see also* Matter of Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1300-1302 (7th Cir. 1995) (declining to certify multi-state, negligence class action based on an amalgamation of the negligence standards of the 50 states and the District of Columbia where the laws at issue were non-identical).

The laws of the various states in the *Vargas* complaint are too dissimilar enough to be managed in a single case. An essential element of the overtime drivers' claim is that they were misclassified as independent contractors, rather than employees; the test used to determine employment status varies by state and requires examination of different types of evidence (even among the states that apply the right to control test, for example, some states use differing tests as to what amounts to sufficient control to make an agent an employee). The plaintiffs' proposed class definition includes plaintiffs from states in which the court denied class certification in its March 25, 2008 order (Illinois, Massachusetts, Missouri, and Montana) based on the determination that individualized issues would predominate in the employment status inquiry. In these states, the agency determination will turn on a variety of issues and a variety of proof from individual plaintiffs, making the proposed *Vargas* class unmanageable. The plaintiffs' suggestion that the *Vargas* class might be divided into subclasses based on the

particular classification test suffers the same defects. Accordingly, the court denies the *Vargas* plaintiffs' motion for class certification.

## Nevada (*DeCesare*)

Named Nevada plaintiffs Mike DeCesare and Michael Meno sue under the Nevada False Claims Act, NEV. REV. STAT. § 357.010-.250, Nevada tax liability statutes, NEV. REV. STAT. § 363B.110(2), and employee benefits statutes, NEV. REV. STAT. Ch. 608, for violation of statutory duties as to unemployment and workers compensation, rescission, declaratory relief, and injunctive relief. Mr. Decesare and Mr. Meno both are former FedEx Home drivers. They seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 1, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Nevada.

FedEx asserted in its removal petition that the class definition would have included more than 200 people at the time the petition was filed.

FedEx opposes class certification, arguing that (1) Nevada uses an "economic realities" test to decide the nature of the principal-agent relationship, and that test requires the evaluation of individualized evidence; (2) the named plaintiffs lack standing and can't adequately represent so diverse a group of drivers; and (3) class certification is inappropriate under the Nevada False Claims

44

Act. The court has addressed similar arguments concerning the adequacy of former drivers as class representatives in other states; for the reasons set forth in those discussions, Fed Ex's arguments as to Mr. DeCesare and Mr. Meno are unpersuasive.

Controlling Nevada law is murky at best. That reasonable minds can differ seems eloquently shown by the Nevada plaintiffs' three briefs that each propose a different rules as the law of Nevada. FedEx's two briefs are consistent, but ultimately unpersuasive, on the governing law: FedEx cites <u>Prieur v. D.C.I. Plasma Ctr. of Nevada, Inc.</u>, 726 P.2d 1372 (Nev. 1986), for the proposition that Nevada has adopted the "economic realties" test of the FLSA. FedEx bases its argument on the following passage:

> Both the Fair Labor Standards Act and the Nevada Wage and Hour Law require an "employer" to pay minimum wage to an "employee" under specific circumstances; therefore, an entitlement to minimum wage must be predicated on the existence of an employment relationship. *See* NRS 608.250; 29 U.S.C. § 206(a)(1) (1982). *See also Urban v. Continental Convention & Show Management*, 68 N.W.2d 633 (Minn.1955). To determine whether an employment relationship exists, the "economic reality" of the relationship must be considered. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2nd Cir.1984).

<u>Id</u>. at 1373. FedEx assumes that since the first sentence speaks of both Nevada law and the FLSA, so must the second sentence. This court believes that had the Nevada Supreme Court intended to adopt a test entirely different from any found in its cases before (or since), the seven-paragraph <u>Prieur</u> opinion would have done so more explicitly. <u>Prieur</u> held that inmates whom the state Department of Prisons

farmed out to a private blood plasma laboratory were employees of the Department of Prisons rather than the private laboratory, and so were not entitled to the federal minimum wage rather than less than thirteen cents an hour.

In a footnote in <u>Boucher v. Shaw</u>, 196 P.3d 959, 963 n.27 (Nev. 2008), the Nevada Supreme Court clarified that the "economic reality" test isn't part of Nevada law insofar as necessary to resolve this case.

In the Nevada plaintiffs' opening class certification brief, they argued that Nevada courts look to the amount of control the principal exercises over the agent when deciding whether the agent is an employee or an independent contractor, and that five factors guide that examination:

> (1) the degree of supervision exercised by the putative employer over the details of the work; (2) the source of the worker's wages; (3) the existence of a right on the part of the putative employer to hire and fire the worker; (4) the extent to which the worker's activities further the 'general business concerns' of the putative employer; and (5) the putative employer's right to control the hours and location of employment.

<u>Williston v. Texaco Refining & Marketing, Inc.</u>, 848 P.2d 1062, 1063 (Nev. 1993) (quoting <u>Leslie v. J.A. Tiberti Constr.</u>, 664 P.2d 963, 965 (Nev. 1983). In later discussions of supplemental authority, Fed Ex argued that this five-factor test looks to actual control, and so weighs against class certification. <u>Williston</u> arose under Nevada's worker compensation laws.

In their reply brief, the Nevada plaintiffs argued that the Nevada courts had abandoned the "actual control exercised" test in favor of the "normal work" test articulated in <u>Meers v. Haughton Elevator</u>, 701 P.2d 1006, 1007 (Nev. 1985), and

codified in the Nevada Industrial Insurance Act, NEV. REV. STAT. § 616B.603. Under that test, a principal is not an if employer if who he enters into a contract with an independent enterprise that is not in the same trade, business, profession or occupation as the principal. NEV. REV. STAT. § 616B.603.

In their supplemental statement following the court's March 2008 class certification opinion, the Nevada plaintiffs argued that while the "normal work" test governs their claims under Nevada statutes, their common law claims are based on Nevada's pre-codification/<u>Meers</u> "right of control" case law, citing <u>Antonini v. Hanna Indus.</u>, 573 P.2d 1184, 1186 (Nev. 1978), and <u>Nevada Indus. Com'n v. Bibb</u>, 374 P.2d 531, 534 (Nev. 1962).

Part of the elusiveness of Nevada law flows from statutory amendments in 1985 to its worker compensation laws. Those amendments made independent contractors employees if the work being done normally is carried out through employees in that business. *See* <u>Meers v. Haughton Elevator</u>, 701 P.2d 1006. These amendments brought more workers within the worker compensation laws and broadened the protection against tort liability of those who, in other states, would not be employers or co-employers. It seems fair—and not unkind—to say that the Nevada courts have struggled to apply these unusual and challenging statutes. *See, e.g.*, <u>Richards v. Republic Silver State Disposal</u>, 148 P.2d 684 (Nev. 2006) (replacing previous analytical distinction between construction and non-construction case with new test).

Under Nevada's Industrial Insurance Act, an employee is a "person in the

service of an employer under any appointment or contract of hire." NEV. REV. STAT. § 616A.105. To prove that an agent is not his employee, a principal must demonstrate both that the agent is an "independent enterprise" and that the principal and agent are not involved in the "same trade, business, profession, or occupation." Hays v. Employers Ins. Co. of Nevada, 31 P.3d 367, 370 (Nev. 2001); NEV. REV. STAT. § 616B.603(1). Nevada's statutory test, then, pays no attention to control, whether contractual or actual; it looks at the nature of the work of the principal and the agent. FedEx has advanced no reason why that cannot be done on a class-wide basis. The possibility has been raised that Nevada might recognize no private right of action with respect to one or more of the drivers' claims under the Industrial Insurance Act, *see* Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96 (Nev. 2008), but that issue, too, is common to the class.

Questions of fact and law common to the class preponderate with respect to claims under the Nevada Industrial Insurance Act; class certification is appropriate as to those claims.

The Nevada courts have provided no reason to think the Industrial Insurance Act test applies to any of the plaintiffs' common law claims. In their most recent submissions, the Nevada plaintiffs argue that pre-Act case law continues to govern those claims. The Nevada plaintiffs argue that the pre-Act cases focused on the principal's right to control the agent, citing Antonini v. Hanna Indus., 573 P.2d 1184, 1186 (Nev. 1978); Nevada Indus. Comm'n v. Bibb, 374 P.2d 531, 534 (Nev. 1962); Jackson v. Southern Pacific Co., 285 F. Supp. 388,

389 (D. Nev. 1968) (applying Nevada law). The plaintiffs might be correct that Nevada common law would provide the rule of decision to the non-Industrial Insurance Act claims, but the cited cases provide no guidance on what the common law might be. The cited cases each sought to apply the predecessor Industrial Insurance Act—they are exercises in statutory construction, not exemplars of Nevada common law.

When the state's highest court hasn't spoken, a court sitting in diversity must try to predict how that court would decide, <u>Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.</u>, 489 F.3d 808, 811 (7th Cir. 2007), but the parties haven't provided the court with any basis for predicting the rule the Nevada Supreme Court would apply to common law determinations as to whether an agency relationship is that of employer and employee. As this court's rulings on the myriad class certification motions in this docket demonstrate, the several states have adopted a wide range of rules, and the Nevada briefs equip this court for nothing better than a guess about what Nevada's highest court might do.

As movants for class certification, the plaintiffs bear the burden of demonstrating that the elements of FED. R. CIV. P. 23 have been satisfied. <u>Arreola v. Godinez</u>, 546 F.3d 788, 797 (7th Cir. 2008) ("A plaintiff seeking class certification must satisfy all of the criteria enumerated in Rule 23(a) . . . and fall within at least one subsection of Rule 23(b)."). To satisfy those requirements in the cases in this docket, as this and previous orders explain, plaintiff drivers must demonstrate that the governing law allows the nature of the agency to be

determined without reference to experiences or circumstances of individual drivers. The Nevada plaintiffs have not carried that burden with respect to their claims that don't arise under NEV. REV. STAT. Ch. 608.

Accordingly, the court GRANTS the Nevada plaintiffs' motion for class certification with respect to their claims under NEV. REV. STAT. Ch. 608, but DENIES the motion in all other respects.


### North Carolina (*Whiteside*)

The North Carolina plaintiffs seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full -time basis (meaning exclusive of time off for commonly excused employment absences) since May 2, 2003, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of North Carolina.

At the time of the class certification motion, 405 drivers would have been in the class. The named plaintiffs are four current FedEx Home Delivery drivers and two former FedEx Ground drivers. They seek the Operating Agreement's rescission as illegal and void as against public policy and to recover the value of their services and expenditures as employees. They also seek certification for a claim under the North Carolina Unfair Trade Practices Act, N.C. GEN. STAT. § 75 1.1(a), and a declaratory judgment that they are employees.

FedEx argues that the North Carolina plaintiffs are inadequate class representatives because the North Carolina drivers are so varied, but the court

rejected similar arguments in the March 2008 order and does so again here, for the same reasons.

FedEx also argues that North Carolina law requires evaluation of each of eight factors, looking beyond the Operating Agreement to determine the parties' intent and communications with each driver when that driver signed on. FedEx says the overall degree of control—not just the right of control—over a particular driver controls the driver's status as an employee, so some of its drivers will be independent contractors even if others are employees.

North Carolina employs an eight-factor test to decide whether one is an employee or an independent contractor: whether the person is engaged in an independent business, calling or operation; is to have independent use of his special skill, knowledge or training in performing the work; is doing a specified piece of work at a fixed price or on a quantitative basis; is subject to discharge for adopting one way of doing the work rather than another; is in the other contracting party's regular employ; is free to use whatever assistants the person might think proper; has full control over such assistants; and selects his or her own time. Johnson v. The News and Observer Publishing Co., 604 S.E.2d 344, 347 (N.C. App. 2004) (quoting Hayes v. Elon College, 29 S.E.2d 137 (N.C. 1944). North Carolina courts consult this eight factor test in deciding whether the putative employer has the right of control that makes the other contracting party an employee. McCown v. Hines, 549 S.E.2d 175, 177-178 (N.C. 2001). "If the employer has the right of control, it is immaterial whether he actually exercises

it." <u>Youngblood v. North State Ford Truck Sales</u>, 364 S.E.2d 433, (N.C. 1988).

None of the cases cited in the briefs suggest that the drivers' status couldn't be decided simply by consideration of the Operating Agreement with FedEx and commonly applicable FedEx policies. When no contract exists, North Carolina courts examine the parties' intent and the control actually exercised. *See, e.g..* <u>McCown v. Hines</u>, 549 S.E.2d 175; <u>State Employment Security Com'n v. Paris</u>, 400 S.E.2d 76 (N.C. App. 1991). Neither party identified a case in which a North Carolina court looked beyond a written contract that would have created an employment relationship. *See, e.g.*, <u>Johnson v. News and Observer Publishing Co.</u>, 604 S.E.2d 344 (N.C. App. 2004) (relying on contract provisions to reverse finding of independent contractor status).

The court grants the North Carolina plaintiffs' motion for class certification.

## Ohio (*Kelly*)

Named Ohio plaintiffs Paul Kelly, Dean Johnson, Thomas Wenzlick, Kenneth R. Miller, Adelbert Lawrence, Russell Jackson and Robert Velo bring claims for unjust enrichment, fraud, constructive trust, declaratory relief, and injunctive relief. Mr. Kelly, Mr.Johnson, Mr. Wenzlick, Mr. Lawrence, Mr. Jackson, and Mr. Velo drive for FedEx Ground. Mr. Miner is a former FedEx Ground driver. The Ohio plaintiffs seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149-RES) and/or provide or will provide package

pick-up and delivery services pursuant to an executed Operating Agreement; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 15, 2002 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of terminal in the state of Ohio.

The Ohio plaintiffs report that when they filed their certification motion, the class would have included at least 750 people.

FedEx opposes certification on several grounds. First, FedEx argues that Ohio law will require examination of individual issues including the parties' actual conduct, actual control of the manner and means of performance, and interpretation of the operating agreement. These individual issues, FedEx says, will predominate in the analysis of plaintiffs' employment classification. FedEx also contends that the fraud claim can't be certified. FedEx also argues, as it has with respect to other states, that the named plaintiffs are inadequate class representatives because they seek remedies not sought by all class members and because they are abandoning drivers who might qualify as employees because of actual control (as distinct from the right to control). The court has addressed those arguments with respect to the adequacy of representatives of other classes, and finds FedEx's arguments equally unpersuasive in Ohio. The court rejected FedEx's argument concerning the fraud claim with respect to the Kansas class certification, and does so here for the same reasons.

The Supreme Court of Ohio tells us that the key factual determination in deciding whether an agent is an employee "is who has the right to control the

manner or means of doing the work." <u>Bostic v. Connor</u>, 524 N.E.2d 881, 884 (Ohio 1988). That decision, the court says, is made by examining a set of factors that echoes those cited in RESTATEMENT (SECOND) OF AGENCY § 220:

> The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

<u>Id</u>. (citing <u>Gillum v. Indus. Comm.</u>, 48 N.E.2d 234, 237-238 (Ohio 1943).

Similar tests have led the court to certify classes in several other states, including Arkansas, Florida, Kansas, Kentucky, Maryland, New Hampshire, New Jersey, Oregon, and Rhode Island.

FedEx argues for a different outcome by citing language from a variety of intermediate appellate court decisions, but none of those cases involved an extracontractual factor making an independent contractor out of an agent over whom a written contract bestows upon the principal the right to control the manner or means of the agent's performance of the contractual duties. See See <u>Napier v. Administrator, Ohio Bureau of Employment Servs.</u>, No. 89 AP-741, 1990 WL 31774, at *2 (Ohio Ct. App. Mar. 22, 1990) (RESTATEMENT factors applied; employment relationship found); <u>Harmon v. Schnurmacher</u>, 616 N.E.2d 591, 593 (Ohio Ct. App. 1992) (RESTATEMENT factors applied; employment relationship found); <u>Bee v. Prof. Courier Int'l, Inc.</u>, No. S-99-030, 2000 WL 376310, at *2 (Ohio Ct. App. Apr. 14, 2000) (equipment lease agreement stipulated independent

contractor relationship, but actual control created fact issue); <u>Jones v. Trademark Cos.</u>, No. 1-99-46, 1999 WL 692603, at *3 (Ohio Ct. App. Sept. 1, 1999) (employment contract stipulated independent contractor relationship, but actual control created fact issue); <u>Clouse v. Quick Air Freight, Inc.</u>, 1994 WL 714498, at *3 (Ohio Ct. App. Dec. 22, 1994) (equipment lease agreement stipulated independent contractor relationship, but actual control created fact issue); <u>Silver v. Statz</u>, 849 N.E.2d 320 (Ohio Ct. App. 2006) (newspaper driver's employment contract stipulated independent contractor relationship, but actual control created fact issue).

FedEx places special reliance on two Ohio cases, but they differ too greatly from this one to be of value. FedEx says that in <u>Hoegler v. Auto Site Recovery Service Inc.</u>, No. 2459-M, 1996 WL 148631 (Ohio Ct. App. Apr. 3, 1996), the court of appeals discounted the significance of the employment agreement when deciding whether the agreement was erroneously excluded from evidence at trial. As with many of the cases just cited, though, the contract described the agent as an independent contractor, while evidence of ample actual control over the agent supported the jury's finding that the agent was an employee. A lack of contractual control doesn't offset an otherwise sufficient exercise of actual control under Ohio law—given enough actual control, the agent is an employee no matter what the contract says. But that doesn't support the inference, which is the proposition FedEx needs to defeat class certification: that forbearance of sufficient contractually-granted actual control produces an independent contractor under

55

Ohio law.

FedEx cites <u>Ogier v. Stewart Brothers, Inc.</u>, No. 96APE12-1732, 1997 WL 447652, at *1 (Ohio Ct. App. Aug. 5, 1997), for the proposition that an unexercised contractual right of control may be disregarded. Perhaps so, but <u>Ogier</u> doesn't say it may be disregarded in this case. The issues in Ogier were twofold: whether Mr. Ogier was an independent contract or an employee, and if he was an employee, whose employee he was. Mr. Ogier's employment contract with LandAir created an employment relationship. LandAir's contract with Stewart appeared to delegate to Stewart some control over Mr. Ogier, but the actual performance of LandAir-Stewart contract defeated argument that Stewart also was Mr. Ogier's employer. That holding falls well short of saying courts may disregard an otherwise sufficient right to control found in the control between the principal and the agent.

The court grants the Ohio plaintiffs' motion for class certification.

## Oregon (*Leighter*)

Named Oregon plaintiffs Jon Leighter and David Spicer seek to certify a damages and unjust enrichment class under Federal Rule of Civil Procedure 23(b)(3) for violation of Oregon Revised Statute § 652.610 (illegal deductions for wages) and rescission of the Operating Agreement. They also seek to certify a class under Federal Rule of Civil Procedure 23(b)(2) for declaratory and injunctive relief.

The plaintiffs' proposed class is defined as:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since July 20, 1999, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Oregon.

The plaintiffs further seek to certify two damages subclasses. The first subclass includes drivers who have been denied overtime premium pay and is defined as:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of Oregon; and 4) who, at any time after August 10, 2005, operated vehicles with a gross vehicle weight rating of less than 10,001 pounds.

The second subclass includes former drivers who have claims for statutory penalty wages under Oregon Revised Statute § 652.150 and is defined as:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of Oregon; and 4) whose Operating Agreement was terminated any date after July 20, 1999.

The named plaintiffs were Home Delivery drivers for FedEx during the proposed class period and performed services for FedEx under the FedEx standard Operating Agreement and common applicable policies. Mr. Leighter stopped

driving for FedEx in August 2007 and Mr. Spicer stopped driving for FedEx in April or May 2007. Both plaintiffs drove trucks with gross weight ratings under 10,001 pounds and both routinely worked for FedEx in excess of eight hours per day and forty hours per week.

At the time of the class certification motion, there were 140 FedEx drivers in Oregon; of these, 42 were Home Delivery drivers who drove trucks under 10,001 pounds. The record establishes numerous other drivers who entered into Operating Agreements during the class period, but who have since ceased working for FedEx.

FedEx argues that the Oregon plaintiffs are inadequate class representatives because the Oregon drivers are so varied, but the court rejected similar arguments in the October 2007 and March 2008 orders and does so again here for the same reasons. FedEx further maintains that extrinsic, parol evidence will be required to interpret the Operating Agreement, which will necessarily involve the evaluation of individualized evidence. Again, the court previously addressed, and rejected, similar arguments in its previous order, and does so again here.

Like most of the other class certification motions, the Oregon plaintiffs' claims hinge primarily on whether FedEx misclassified its drivers as independent contractors. FedEx argues that Oregon law requires individualized evidence to resolve the issue of independent contractor status, so class certification isn't appropriate. As to the plaintiffs' wage deductions, overtime, and non-payment of wages upon termination claims, FedEx acknowledges that this court has already

found that the applicable right to control test can be addressed on a class-wide basis. (*See* March 25, 2009 Opinion, pp. 108-110, *Slayman* plaintiffs). Although the court also previously certified the *Slayman* plaintiffs' rescission claim under Oregon law, FedEx now asserts that this claim should be governed, at least in part, by Oregon Revised Statute § 670.600, which requires individualize analysis. The court's previous order didn't address the statutory definition of independent contractor found in § 670.600.

As indicated in the March 2008 order, Oregon courts generally utilize a common law "right to control" test to decide a worker's status. <u>Perri v. Certified Languages Int'l LLC</u>, 66 P.3d 531, 534 (Or. Ct. App. 2003) (citation omitted). "While there is no simple measure of the extent to which an employer may control a worker in the performance of his task without creating a master-servant relationship, *control over performance remains the principal test.*" <u>Schaff v. Ray's Land & Sea Food Co., Inc.</u>, 45 P.3d 936, 939 (Or. 2002) (*quoting* <u>Jenkins v. AAA Heating & Cooling, Inc.</u>, 421 P.2d 971 (1966)). "Generally, the test for determining whether one is a servant or an independent contractor is based not on the actual exercise of control by the employer, but on the right to control." <u>Cantua v. Creager</u>, 7 P.3d 693, 700 (Or. Ct. App. 2000) (*quoting* <u>Great American Ins. v. General Ins.</u>, 475 P.2d 415 (Or. 1970)). Courts analyze the following factors under that test: (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. <u>Id.</u> (citation omitted).

No single factor is dispositive, but a single factor indicating an employer-

employee relationship may be proof of an employment relationship, "whereas contrary evidence, indicating independent contractor status, is, at best, mildly persuasive and may have no effect at all to a determination of worker status." Stamp v. Dept. of Consumer and Bus. Servs., 9 P.3d 729, 733 (Or. App. 2000) (citation omitted). Oregon courts use the "right of control" test when evaluating whether a person is an employer under Oregon Revised Statute § 652. Ford-Torres v. Cascade Valley Telecom, Inc., 2008 WL 551503, at * 3 (D. Or. 2008). This test also applies to claims for overtime payments. Perri v. Certified Languages, 66 P.3d at 535 (applying "right to control" test to alleged violations of Oregon's minimum wage and overtime statutes). This "right to control" test thus applies to the plaintiffs' claims of wage deductions, overtime, and non-payment of wages upon termination. As the court has previously found, this test can be applied by examining the Operating Agreement and commonly applicable FedEx policies.[5] *See* March 25, 2009 Opinion, pp. 109-110 (citing Oregon cases applying varying tests, but concluding that the applicable tests wouldn't require individual, driver-by-driver analysis to determine employment status).

The plaintiffs' rescission claim is based on FedEx's alleged misclassification of its drivers as independent contractors to evade employment-related obligations such as providing workmen's compensation insurance and unemployment

---

[5] The court notes that the plaintiffs may have indicated a desire to introduce anecdotal evidence to support their claims in this action. If the plaintiffs intend to introduce anecdotal evidence of FedEx's actual exercise of control to support their claims, they should inform the court immediately because this may require re-evaluation of class certification.

insurance and the withholding of income tax. These obligations arise by statute and don't apply to "independent contractors." Oregon Revised Statute § 670.600 sets forth a standard to be used when determining if an individual is an independent contractor for purposes of Chapter 316 (personal income tax), 656 (workers' compensation), and 657 (unemployment insurance).

Although Section 670.600 states a test for determining whether a worker is an independent contractor, the Oregon Supreme Court in S-W Floor Cover Shop v. Nat'l Council on Compensation Ins., 872 P.2d 1, 10 (Or. 1994) found:

> A determination first is made as to whether one is a "worker" before a determination is made as to whether that "worker" is a "nonsubject" worker pursuant to one of the exemptions of ORS 656.027. The initial determination of whether one is a "worker" under ORS 656.005[] continues to incorporate the judicially created "right to control" test. One who is not a "worker" under that test is not subject to workers' compensation coverage, and the inquiry ends. The "nonsubject worker" provisions of ORS 656.027 never come into play. If the initial determination made under ORS 656.005[] is that one is a worker because one is subject to direction and control under the judicially created "right to control" test, then one goes on to determine under ORS 656.027 whether the worker is "nonsubject" under one of the exceptions of that statute.

Id. at 10. In discussing the "right to control test" in the workers' compensation context, the court stated that it "is based not on the actual exercise of control by the employer, but on the right to control."' Id. at 5. Further, "[w]here the relationship between the parties cannot be established by the 'right to control' test," the court stated that it is "permissible to turn to the judicially created 'nature of the work' test to determine if an employment relationship exists." Id. at 5, n.6 (citation omitted).

The S-W Floor Cover Shop holding made the criteria of Section "670.600 essentially irrelevant to determining whether a person is a worker under the Workers' Compensation Law." Trabosh v. Washington County, 915 P.2d 1011, 1014 (Or. App. 1996) ("Because the definition of worker incorporates the right to control test without using the term "independent contractor" or otherwise referring to ORS 670.600, the traditional test of an independent contract remains the operative one; the exemptions of ORS 656.027, with their incorporation of ORS 670.600, never come into play."). Since the Supreme Court's decision, courts "have applied the right to control and nature of the work tests to determine a person's status under the Workers' Compensation Law without reference to ORS 670.600." Id.

"[W]hen an employer has the right to control a claimant's performance in some respects but not others, it is essential that [the court] consider the factors which make up the 'nature of work' test in deciding whether the control that employer retains makes the relationship one of master and servant." Rubalcaba v. Nagaki Farms, Inc., 43 P.3d 1106, 1111-1112 (Or. 2002) (citing Woody v. Waibel, 554 P.2d 492 (Or. 1976)) (although control is an "essential ingredient" in determining employment status, workers' compensation statutes do not preclude consideration of nature of work factors when some evidence of control exists)). The right to control and nature of work tests aren't independent and shouldn't be applied hierarchically. Id. at 1112. When "there is some evidence suggesting that an employer retained the right to control the method and details of a claimant's

work, a conclusion about the claimant's status depends on the analytical factors relevant to both tests." Id. When the right to control test conclusively establishes an employment relationship however, it may not be necessary to consider the nature of work factors. *See* Stamp v. Dept. of Consumer and Bus. Serv., 9 P.3d 729, 735 (Or. App. 2000). In evaluating the "nature of work" test, the court should "consider[] factors such as whether the work at issue is a regular part of the employer's business, whether the work is continuous or intermittent, and whether the duration of the work is such that it qualifies as a hiring for a continuing service or as contracting for the completion of a particular job." Schmidt v. Intel Corp., 112 P.3d 428, 432 (Or. App. 2005) (citation omitted).

The Oregon Supreme Court uses the right to control and nature of work test when determining employment status in worker compensation cases; these tests can likely be analyzed by evaluating common evidence applicable to the entire class. But this isn't so when analyzing the unemployment insurance statute,[6] because the test used in that context involves application of the statutory definition of independent contractor found in Section 670.600.

Oregon's unemployment insurance statute only applies to "employment", defined with certain exceptions as "service for an employer . . . performed for

---

[6]Determining employment status under the tax withholding statute likely requires individualized analysis, but because the application of Section 670.600 to this statute hasn't been clarified in light of S-W Floor Cover Shop v. Nat'l Council on Compensation, the court limits its analysis to the unemployment insurance statute.

remuneration or under any contract of hire . . ." ORS § 657.030(1).[7] There is a statutory exception for services performed by an "independent contractor as that term is defined in ORS 670.600." ORS § 657.040(1). To be considered an independent contractor, an individual must meet all applicable standards as outlined in the statute. Each standard is conclusive. <u>PacifiCab Co. v. Employment Dept.</u>, 69 P.3d 774, 776 (Or. App. 2003). Section 670.600[8] provides:

> 2). . . "[I]ndependent contractor" means a person who provides services for remuneration and who, in the provision of the services:
>
> (a) Is free from direction and control over the means and manner of providing the services, subject only to the right of the person for whom the services are provided to specify the desired results;
> (b) Except as provided in subsection (4) of this section, is customarily engaged in an independently established business;
> (c) Is licensed under ORS chapter 671 or 701 if the person provides services for which a license is required . . . ; and
> (d) Is responsible for obtaining other licenses or certificates necessary to provide the services.
>
> (3) For purposes of subsection (2)(b) of this section, a person is considered to be customarily engaged in an independently established business if any three of the following requirements are met:
>
> (a) The person maintains a business location:
>> (A) That is separate from the business or work location of the person for whom the services are provided; or
>> (B) That is in a portion of the person's residence and that

_____

[7]FedEx contends that it is exempted from this statute pursuant to ORS § 657.047(1)(b), which provides a blanket exemption for certain transportation related services. The court however needn't decide that issue today.

[8]Section 670.600 underwent significant revisions that became effective in 2006. Oregon Laws Ch. 533, S.B. No. 323 (2005). *See* PacifiCab Co. v. Employment Dept., 69 P.3d at 697 (analyzing the prior version of the statute). The court recites the current version of the statute in this opinion, but notes that both versions would likely be applicable to individuals in the proposed class.

portion is used primarily for the business.

(b) The person bears the risk of loss related to the business or the provision of services as shown by factors such as:

    (A) The person enters into fixed-price contracts;

    (B) The person is required to correct defective work;

    (C) The person warrants the services provided; or

    (D) The person negotiates indemnification agreements or purchases liability insurance, performance bonds or errors and omissions insurance.

(c) The person provides contracted services for two or more different persons within a 12-month period, or the person routinely engages in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services.

(d) The person makes a significant investment in the business, through means such as:

    (A) Purchasing tools or equipment necessary to provide the services;

    (B) Paying for the premises or facilities where the services are provided; or

    (C) Paying for licenses, certificates or specialized training required to provide the services.

(e) The person has the authority to hire other persons to provide or to assist in providing the services and has the authority to fire those persons.

ORS § 670.600(2) and (3). Once the claimant has established an employment relationship, the employer has the burden to establish that the worker is an independent contractor under the statute. Petersen v. Employment Dept., 898 P.2d 210, 217 (Or. App. 1995); Travel Networkers, LLC v. Employment Dept., 30 P.3d 416, 418 (Or. App. 2001) ("[T]he fact that Travel Networkers pays its agents for their services means that they are deemed employees for unemployment tax purposes, unless Travel Networkers can prove that its agents are independent contractors, as that term is defined in ORS 670.600.").

As has been explained in greater detail with respect to other states that use

similar tests that place burdens on the putative employer to prove a variety of things in addition to lack of contractual control, the court cannot limit FedEx's proof to the Operating Agreement and commonly applicable policies. To prevail on the named plaintiffs' claim for rescission under Oregon law, FedEx will need to prove much more than simply lack of contractual control, including lack of control in fact and engagement in an independently established business. The plaintiffs might be correct that FedEx can't prove lack of control under the contract, and so will fail in its ultimate burden of proof. Or the plaintiffs might be wrong. As noted previously though, today is not the occasion to evaluate the sufficiency of FedEx's ultimate proof. Even though the plaintiffs likely can present common evidence on FedEx's alleged violation of the workers' compensation statute, the court declines to certify their rescission claim because the claim rests in part on an alleged violation of the unemployment insurance statute, which requires application of Section 670.600.

The court takes this opportunity to reconsider its holding in *Slayman* (Case No. 3:05-CV-596 (OR)), on class certification of the plaintiffs' claim for rescission. For the reasons stated above, the court decertifies the plaintiffs' rescission claim in the *Slayman* action.

FedEx also claims that class certification should be denied on the plaintiffs' proposed subclasses because the class members can't be readily ascertained. The plaintiffs propose one subclass arising under Oregon Revised Statute § 652.150 (non-payment of wages upon termination). Section § 652.150 applies only to

situations where "an employer discharges an employee," "when employment is terminated by mutual agreement," or when "an employee who does not have a contract for a definite period quits employment." ORS § 652.140. This class of plaintiffs can be readily ascertained by making categorical determinations relating to drivers' termination from FedEx and doesn't require individual factual analysis. Similarly, plaintiffs' proposes subclass for overtime wages applies to drivers who operated trucks less than 10,001 pounds. This class is based on the objective standard of whether a driver's truck weighs less than 10,001 pounds and can be readily ascertained without requiring the court to engage in individual factual analysis.

For the foregoing reasons, the court GRANTS the Oregon plaintiffs' motion for class certification IN PART. The motion is GRANTED with respect to plaintiffs' claims for damages and equitable relief relating to wage deductions, overtime, and non-payment of wages upon termination. The motion is DENIED with respect to plaintiffs' claim for rescission.

### Utah (*Fishler*)

The Utah plaintiffs seek to certify the following class:

All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 16, 2003, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Utah.

At the time of the class certification motion, FedEx had contracts with ninety-one drivers in Utah. The named plaintiffs are three current pickup and delivery drivers dispatched out of terminals in Utah who performed services for FedEx under the terms of the same Ground Operating Agreement as the Kansas plaintiffs. Two of the named plaintiffs work full-time for FedEx and one of the plaintiffs worked full time until February 2008 and now works part-time. The plaintiffs claim that FedEx wrongfully classified them as independent contractors instead of employees and made improper withholdings and deductions from their wages in violation of the Utah Payment of Wages Act and related Utah Administrative Code. The plaintiffs also seek rescission of the Operating Agreement as void against public policy and, once those contracts are rescinded, *quantum meruit* for compensation of the business expenses the drivers were required to incur. They also seek a declaratory judgment that they are employees.

FedEx argues that the Utah plaintiffs are inadequate class representatives because the Utah drivers are so varied, but the court rejected similar arguments in the October 2007 and March 2008 orders and does so again here for the same reasons. FedEx also contends that a class action isn't the superior method for litigating the claims of each potential class member because there is no manageable definition of "full-time," driver,[9] individualized litigation is feasible, and

---

[9] FedEx also argued that "[t]he lack of a defined time period for class participation render[ed] the class too indefinite to permit class treatment." The Utah plaintiffs modified the proposed class to include a time limitation.

the plaintiffs didn't present a trial plan. Again, the court previously addressed, and rejected, similar arguments in its March 2008 order. FedEx further argues that the plaintiffs' equitable relief claims are unfit for class certification under Rule 23(b)(2) because they seek primarily monetary relief. The court has also previously considered and rejected a similar argument in its October 2007 order.

Like most of the other motions for class certification, all of the Utah plaintiffs' claims hinge on whether FedEx misclassified its drivers as independent contractors. FedEx argues that Utah law requires individualized evidence to resolve the issue of independent contractor status, so class certification isn't appropriate. FedEx reasons that Utah law requires the court to look beyond the Operating Agreement to determine the extent of control it actually exercised over the driver. FedEx acknowledges that Utah utilizes a "right to control" test in workers' compensation cases, but says that the workers' compensation cases are inapplicable because those cases address a specific statutory definition of "employee" that doesn't apply to the statutory wage deduction and common law claims the Utah drivers assert. FedEx points out that "employee" isn't defined in the Utah Payment of Wages Act or related provisions of the Utah Administrative Code and the court therefore should apply the judicially created agency test set forth in <u>Thiokol Chemical Corp. v. Peterson</u>, 393 P.2d 391 (Utah 1964).

Contrary to FedEx's assertions, Utah courts have consistently applied a "right to control" analysis in non-workers' compensation cases when determining employer-independent contractor status; nothing in <u>Thiokol Chemical v. Peterson</u>

69

suggests that the court intended to set forth a different rule. The issue in <u>Thiokol</u> <u>Chemical v. Peterson</u> was whether Thiokol was an agent or independent contractor of the county for purposes of determining Thiokol's tax obligations. 393 P.2d at 392, 394-395. The court noted that the most fundamental criteria in making this determination is "the extent of control" and explained that "[i]f the employer exercises control over the means of accomplishing the result, this points toward an agent or servant relationship." <u>Id.</u> at 394. The <u>Thiokol</u> court didn't focus on the degree of control actually asserted, but instead relied on the terms in the parties' contract to determine employment status. <u>Id.</u> at 394-395. The court found that the "main purport of the contract . . . is directioned toward requiring Thiokol to pursue its own course in accomplishing 'the end result,' rather than the Government having actual management and direction of the enterprise." <u>Id.</u> The court concluded that under the facts shown and the terms of the contract, Thiokol was an independent contractor.

More recent cases confirm the "right to control" test is applicable. In <u>Glover</u> <u>v. Boy Scouts of Am.</u>, 923 P.2d 1383, 1385 (Utah 1996), a case involving vicarious liability, the court stated that "[w]hether an employer-employee relationship exists under the first prong of this test is determined by whether the alleged employer had the right to control the employee." <u>Id.</u> (<i>citing</i> <u>Averett v. Grange</u>, 909 P.2d 246, 249 (Utah 1996)). The court explained that "[t]he right-to-control concept comes from agency law," and noted that this test has been applied most often in Workers' Compensation cases. <u>Id.</u> The court relied on <u>Foster v. Steed</u>, 432 P.2d 60 (Utah

1967), a factually similar case, noting that its inquiry in <u>Foster</u> "was based on the general analytical model we use in applying the right-to-control test in workers' compensation situations, i.e., identifying specific facts which did or did not evidence the principal's right to control the agent." <u>Glover v. Boy Scouts</u>, 923 P.2d at 1386 (*citing* <u>Foster v. Steed</u>, 432 P.2d at 62-63). The court stated that "it is not the *actual* exercise of control that determines whether an employer-employee relationship exists; it is the right to control that is determinative." <u>Id.</u> at 1388 (*citing* <u>Averett v. Grange</u>, 909 P.2d 246, 249 (Utah 1995)).

Utah's "right to control" test applies to this case. The court in <u>Utah Home Fire Ins. Co. v. Manning</u>, 985 P.2d 243 (Utah 1999) explained that "[r]egardless of how the parties intended to structure their relationship, a worker is considered to have been an employee if the employer had the right to control the worker's manner or method of executing or carrying out the work." <u>Id.</u> at 246 (citations omitted). The court will consider the following when determining the parties' relationship: "(1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment . . .; and (4) the furnishing of equipment." <u>Id.</u> (citations omitted). The court may also "consider the intent of the parties and the business of the employer." *See* <u>Glover v. Boy Scouts</u>, 923 P.2d at 1386. Although all the factors are taken into consideration, "the first factor—'the legal right of direction and control over [the employee],'—is the 'critical element underlying an employment relationship.'" <u>Mitchell v. Rice</u>, 885 P.2d 820, 821 (Utah

App. 1994) (*citing* <u>Kinne v. Indust. Comm'n</u>, 609 P.2d 926, 928 (Utah 1980)).

FedEx contends that even if the "right to control" test applies, it requires individualized determinations, pointing to the following statement in <u>Utah Home Fire Ins. v. Manning</u>: "In assessing a given relationship, not only do we consider whatever agreements exist concerning the right of control, but we also take into account the actual dealings between the parties and the control that was in fact asserted." <u>Utah Home Fire v. Manning</u>, 985 P.2d at 247. The <u>Manning</u> court found that not only did the contracts in that case establish a right to control, but such control was actually exercised. <u>Id.</u> at 247. The court in <u>Manning</u> didn't say or suggest that if the contract establishes a right to control, the court can disregard such contractual terms in light of the actual control exercised. As stated, it is not the exercise of control, but the right to control that is determinative. *See* <u>Utah Home Fire v. Manning</u>, 985 P.2d at 246.

FedEx further notes that the concept of right to control isn't rigidly and narrowly defined and that many factors have been applied in determining the right to control, including "actual supervision of the worker, the extent of the supervision, the method of payment, the furnishing of equipment for the worker, and the right to terminate the worker." <u>Bennett v. Industrial Com'n of Utah</u>, 726 P.2d 427, 430 (Utah1986). In <u>Bennett</u>, though, there was no written contract, so the court had to analyze the parties' actual dealings to determine control. *See* <u>Bennett v. Industr. Comm'n</u>, 726 P.2d at 430. The court isn't persuaded that actual control is relevant when the right to control in a contract is sufficient to

establish an employee-employer relationship, as the plaintiffs contend in this case.

FedEx also relies on the court's holding in <u>Tasters Ltd. v. Dept. of Employment Sec.</u>, 863 P.2d 12 (Utah App. 1993), to support its proposition that individual evidence is necessary to determine how the Operating Agreement actually was implemented. The <u>Tasters</u> court reversed a decision by the Board of Review of the Industrial Commission that persons demonstrating products in grocery and department stores were employees and under Utah's Employment Security Act). <u>Id.</u> at 27. The statute requires the Board to analyze twenty enumerated factors when deciding employment status. <u>Id.</u> at 17. The Board relied in part on a two-page instruction given to the demonstrators entitled, listing fourteen guidelines concerning attire, length of breaks, punctuality, and demonstration tactics. <u>Id.</u> at 22. The Board found that this list set forth binding requirements that indicated employee status. <u>Id.</u> The court of appeals reversed, partly because the list was subject to mixed interpretations and extrinsic evidence was needed to determine whether the instructions were mandatory or merely advisory. <u>Id.</u> at 23, 27. The court found that given the evidence presented, the record didn't "support a finding that this list set forth mandatory requirements of the sort typical of a routine employment relationship." <u>Id.</u> at 23.

The <u>Tasters</u> court relied on a statutory test that doesn't apply to this case. Further, the Operating Agreements in this case are detailed agreements delineating the parties' relationship, not advisory guidelines. If FedEx contends that some of the agreements' terms or policies are merely advisory, it can point to common proof

of generally applicable policies and procedures to defend its interpretation of the agreements; individualized analysis isn't necessary. *See* <u>Tasters v. Employment Sec.</u>, 863 P.2d at 23 (making a determination for a class of people based on common evidence).

The extent to which FedEx exercised its right to control any given employee or terminal won't change the analysis of employee-independent contractor status: while one might become an employer by exercising more authority than is contractually granted, FedEx hasn't cited authority that forbearance of the exercise of contractually granted power to control affects the analysis. *See* <u>Mitchell v. Rice</u>, 885 P.2d at 822 (finding that even though the extent of actual control was disputed, the plaintiffs were able to establish employment status based on the right to control in the contract). The court understands the Utah plaintiffs' argument to be that though the Operating Agreement labels the drivers as independent contractors, the Operating Agreement and commonly applicable FedEx policies reserve to FedEx the right to control, making the drivers employees. The cases don't support FedEx's argument that the Utah courts will look beyond a written contract that would have created an employment relationship to find independent contractor status based on actual control.

FedEx also argues that the right to control isn't determinative and that the courts should look at all the factors when deciding the relationship of the parties, including the parties' intent. *See* <u>Gourdin By and Through Close v. Sharon's Cultural Educ. Recreational Ass'n</u>, 845 P.2d 242, 245 (Utah 1992) (considering

compensation, direction and control, intent, and business context; no single factor is completely controlling); *see also* Sutton v. Indust. Comm'n of Utah, 344 P.2d 538 (Utah 1959) (stating that intent is one of the most important factors). Although intent is a factor for the court to consider, recent cases haven't placed much, if any, emphasis on intent, and there is little support that this factor would require the court to look beyond the terms of the Operating Agreement and common applicable policies.

Nothing suggests the court will need to engage in an individualized analysis when addressing the right to hire and fire, the method of payment and the furnishing of equipment—the other factors this court must consider. Utah Home Fire Ins. Co. v. Manning, 985 P.2d at 246. The court addressed similar factors in its previous orders and found that such factors can be determined primarily by consulting the Operating Agreement and commonly applicable FedEx policies. Review of these factors will require analysis of common proof applicable to the class.

FedEx further contends that the plaintiffs' rescission claims are unsuitable for class certification because FedEx is entitled to assert a defense of laches requiring individualized considerations. The court addressed a similar argument under Minnesota law and found that "[t]he variety of individual defenses . . . doesn't eliminate the presence of a predominant common question of fact." *See* LaFlamme v. Carpenters Local No. 370 Pension Plan, 212 F.R.D. 448, 455 (N.D. N.Y. 2003); Gaspar v. Linvatec Corp., 167 F.R.D. 51, 58 (N.D. Ill. 1996)." *See also*

Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality . . . should be determined with reference to the company's actions, not with respect to particularized defenses . . . against certain class members."). FedEx hasn't pointed to anything about Utah law on laches that would lead this court to find differently here. Any inquiry concerning the defense of laches can be addressed by examining common evidence applicable to the class members. *See* Kelly v. City and County of San Francisco, 2005 WL 3113065, at *6 (N.D. Cal. 2005) (unreported).

FedEx further argues that the Utah plaintiffs seek to certify a class that will necessarily encompass persons who have time-barred claims under the Wage Payment Act, requiring individual analysis of its statute of limitations defense. The Utah plaintiffs seek to certify a class of full-time drivers since November 16, 2003 and explain that "[t]his time period is calculated based on the greater of the statute of limitations for rescission and *quantum merit*, McKean v. McBride, 884 P.2d 1314, 1317-1318 (Utah Ct. App. 1994) (4 years), and the statute of limitations for Wage Payment Act claims, Utah Code Ann. § 78B-2-305 (3 years for statutory claims)." FedEx contends that the plaintiffs' motion to certify a class with a four-year time window means that there will be class members who have time-barred claims. The court isn't persuaded that resolving the statute of limitations defense will require factually individualized analysis of the class members; this defense can likely be resolved by categorical determinations. The court directs the Utah plaintiffs to provide FedEx with the names of the class members they allege fall within the three year limitations period for relief under the Wage Payment Act once this

information can be ascertained.

For the foregoing reasons, the court grants the Utah plaintiffs' motion for class certification.

## Vermont (*Gruhn*)

The Vermont plaintiffs seek to certify the following class:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP 149 and form OP-149 RES); 2) drove or will drive a vehicle on a fulltime basis (meaning exclusive of time off for commonly excused employment absences) since July 25, 2001 to provide package pickup and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Vermont.

The named plaintiffs are former FedEx Ground driver Frank Gruhn, former FedEx Home driver Kevin Draper, and current FedEx Home driver Jeremy MacDonald. They report that when they filed their certification motion, there were at least 42 drivers in Vermont. They claim FedEx violated the Vermont Independent Contractor Law, VT. STAT. ANN. tit. 21, §§ 341, 601(3), and also violated the Vermont Wage Laws, VT. STAT. ANN. tit. 21, §§ 342, by withholding from the drivers' compensation amounts to which employees are entitled.

The parties' dispute over the propriety of certification of a Vermont class is fought on ground that already has been plowed. The parties agree that Vermont law places on FedEx the burden to establish that the drivers are not employees. VT. STAT. ANN. tit. 21, § 341. FedEx must prove that

(1) the individual has been and will continue to be free from control or

77

direction over the performance of such services, both under the contract of services and in fact; and

(2) the service is either outside all the usual course of business for which such service is performed, or outside all the places of business of the enterprise for which such service is performed; and

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business.

VT. STAT. ANN. tit. 21, § 341(1-3).

As with Massachusetts, Illinois, and Colorado, Vermont law places burdens on FedEx to prove things that cannot all be determined simply by examination of the Operating Agreement and common applicable policies. To meet its burden of proof, FedEx must prove that each driver was free from control or direction over the performance of the driver's services in fact as well as under the contract, and that each driver is customarily engaged in an independently established calling. Perhaps, as the Vermont plaintiffs believe, FedEx will fail because it can't prove the drivers' freedom from control or direction under the Operating Agreement. But this is not the stage of proceedings to decide that issue, and if FedEx clears that hurdle, several dozen individualized findings would remain to be made on the issue of liability.

For these reasons, the court denies the Vermont plaintiffs' motion for class certification.

## Certification

For the reasons stated in the October 2007, the court continues to believe

that certification under Rule 23(b)(3) is the most appropriate course. Accordingly, the classes certified in this order are certified under that Rule.

## Conclusion

The court ORDERS as follows:

1. The court GRANTS the Arizona plaintiffs' motion for class certification (Doc. #866), and certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES) and/or provided or will provide package pick-up and delivery services pursuant to an executed Operating Agreement; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 11, 2004, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Arizona.

2. The court GRANTS the Georgia plaintiffs' motion for class certification (Doc #868), and certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP -149 and form OP149 RES) and/or provided or will provide package pick -up and delivery services pursuant to an executed Operating Agreement; 2) drove or will drive a vehicle on a full -time basis (meaning exclusive of time off for commonly excused employment absences) since July 26, 200 1, to provide package pick -up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Georgia.

79

3. The court GRANTS the North Carolina plaintiffs' motion for class certification (Doc #869), and certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All persons who: 1) entered or will enter into a FXG Ground or Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full -time basis (meaning exclusive of time off for commonly excused employment absences) since May 2, 2003, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of North Carolina.

4. The court GRANTS the Ohio plaintiffs' motion for class certification (Doc #1539), and certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149-RES) and/or provide or will provide package pick-up and delivery services pursuant to an executed Operating Agreement; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since May 15, 2002 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of terminal in the state of Ohio.

5. The court GRANTS the Utah plaintiffs' motion for class certification (Doc #1538), and certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since November 16, 2003, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Utah.

6. GRANTS IN PART the Louisiana (*Boudreaux*) plaintiffs' motion for class certification (Doc #1540). The motion is DENIED with respect to claims under La R.S. § 23:635, DENIED with respect to claims for rescission, DENIED with respect to claims of current drivers under La. R.S. § 23:631, and DENIED with respect to claims under La. R.S. § 23:963 based on any theory of coercion not arising from requirements in the Operating Agreement and commonly applicable FedEx policies. The motion is GRANTED in all other respects, but the court orders the plaintiffs to, within ten days of this order, revise the class definition for claims arising under § 23:631;

7. GRANTS the Nevada plaintiffs' motion for class certification (Doc #870) with respect to their claims under NEV. REV. STAT. Ch. 608, but DENIES the motion in all other respects. In doing so, the court certifies the following class pursuant to Fed. R. Civ. P. 23(b)(3):

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 1, 2001 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Nevada.

8. GRANTS IN PART the Oregon (*Leighter*) plaintiffs' motion for class certification (Doc #871). The motion is DENIED with respect to plaintiffs' claim for rescission. The motion is GRANTED with respect to plaintiffs' claims for damages and equitable relief relating to wage deductions,

overtime, and non-payment of wages upon termination, and the court certifies the proposed class and subclasses with respect to those claims pursuant to Fed. R. Civ. P. 23(b)(3).

9. The court DENIES the certification motions filed with respect to Colorado (Doc #1537), Connecticut (Doc #867), *Givens* (FLSA) (Doc #873), *Vargas* (MCSA) (Doc #874), and Vermont (Doc #872);

10. DENIES the *Givens* plaintiffs' motion to equitably toll the statutory requirements of 29 U.S.C. § 255(a) [Doc. #825];

11. DENIES AS MOOT FedEx's motion to strike the late-filed *Givens* plaintiffs' reply brief in support of their motion to equitably toll the statutory requirements of 29 U.S.C. § 255(a) [Doc. #857];

12. DENIES the plaintiffs' motion for oral argument on the fourth wave [Doc. #1008); and

13. On reconsideration, decertifies the plaintiffs' rescission claim in the Oregon *Slayman* action (3:05-CV-596).

The court understands this ruling, combined with those of October 2007 and March 2008, to resolve all pending class certification motions. The court will turn its attention to the summary judgment motions and related issues.

SO ORDERED.

ENTERED:    July 27, 2009

                    /s/ Robert L. Miller, Jr.
                    Chief Judge

United States District Court